PEOPLE ex rel. COMMISSIONER OF PUBLIC CHARITIES FOR CITY
OF NEW YORK v. WEXLER.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

HUSBAND AND WIFE (§ 308*)—SUPPORT—ACTION AGAINST HUSBAND.

　　Where both husband and wife resided in New York City, and he re-
fused to support her, so that she was in danger of becoming a public
burden, he could be proceeded against under Greater New York Charter
(Laws 1901, c. 466) § 685, which gives a remedy against every person in
New York City who abandons or "leaves" his wife without adequate
support although the original abandonment was not in the city.

　　[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1105,
Dec. Dig. § 308.*]

Appeal from Court of General Sessions, New York County.

Proceeding by the People, on the relation of the Commissioner
of Public Charities on behalf of Deborah Wexler, against Benjamin
Wexler. From a judgment adjudicating defendant a disorderly per-
son, and requiring him to support his wife, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

Charles Weishaupt, of New York City, for appellant.

Terence Farley, of New York City, for respondent.

McLAUGHLIN, J. This proceeding was brought in the Domestic
Relations Court of the city of New York to compel defendant to sup-
port his wife. He married her in Russia in 1910, and, after living
with her a short time, abandoned her and came to this country. Two
years later she voluntarily, and by means procured solely through her
own efforts, followed him. They are both now residing separate and
apart in New York City. She has no means, and since her arrival
has asked him to support her, which he has refused to do. He has
never paid or contributed anything towards her support since the
abandonment, and she is now in danger of becoming a charge upon
the public.

The complaint originally charged defendant with having abandoned
his wife in the city of New York. He was found guilty, but, on ap-
peal to the Court of General Sessions, it was held that the proof did
not support the allegations of the complaint, in that the abandonment
occurred in Russia, and for that reason a new trial was ordered.
Upon the new trial the complaint was amended so as to charge that
the abandonment took place "in Europe." He was again found
guilty, adjudged a disorderly person, directed to pay $4 a week for
the period of one year to the commissioner of public charities of the
city of New York for the support of his wife, and to furnish a bond
in the sum of $208 to secure such payment. The appeal is from
such adjudication.

The only question raised by the appeal is whether, the abandonment
having originally taken place outside the state of New York, the
proceeding may be maintained, notwithstanding both parties are now

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

residing in the city of New York, and she is in danger of becoming a burden on the public. The Consolidation Act (Laws 1882, c. 410) § 1455, as amended by chapter 667 of Laws of 1897, provided, "Every person who shall threaten to abandon or who shall have actually abandoned his family, wife or child in the city of New York, or any other place, without adequate support," was a disorderly person, and liable to such a proceeding as the present one. But that section was repealed by the Greater New York charter as enacted in 1901 (Laws 1901, c. 466), if not as enacted in 1897 (Laws 1897, c. 378). Section 1608 of the charter as enacted in 1901 expressly repealed the Consolidation Act, and statutes amendatory thereto, "in so far as the subject-matter thereof is revised or included in this act." Sections 685–691 of the charter contain specific provisions covering abandonment and the remedy therefor. The authority, therefore, for the maintenance of the present proceeding, must be found, if at all, not in the Consolidation Act, but in the charter. The charter, § 685, provides, "Every person in the city of New York as constituted by this act, who actually abandons his wife or children without adequate support, or leaves them in danger of becoming a burden upon the public, or who neglects to provide for them according to his means" may be required to pay a sum sufficient for that purpose; and by section 686 required to give an undertaking to secure such payment for one year. The purpose of the statute is not to adjust matrimonial differences, but to furnish a means of relieving the city from the burden of supporting an abandoned wife or children and of placing such burden where it rightfully belongs. Goetting v. Normoyle, 191 N. Y. 368, 84 N. E. 287; People v. Palminteri, 119 App. Div. 82, 103 N. Y. Supp. 1068; People ex rel. Feeney v. Dershem, 78 App. Div. 626, 79 N. Y. Supp. 612. As said in People ex rel. Feeney v. Dershem, supra, the statute was "designed to prevent her from becoming a charge upon the public purse." It applies not only to one who "abandons," but equally to one who "leaves," his wife in danger of becoming a public charge, and as to the latter it matters not where the abandonment, in the first instance, took place. The statute is "abandons or leaves." The husband and wife are now residing in the city of New York. She has no means, and is unable to support herself. She has asked her husband to support her, and he has refused. She must be supported by some one; if not by the husband, then by the public. By his refusal, therefore, he has brought himself within both the letter and spirit of the statute. He is "in the city of New York," and is leaving his wife "in danger of becoming a burden upon the public."

The view thus taken of the statute, it is true, is somewhat in conflict with the view expressed in People v. Crouse, 86 App. Div. 352, 83 N. Y. Supp. 812. There it seems to me the main purpose of the statute was overlooked, viz., the public interest. The burden upon the city is precisely the same if it supports a wife, whether the abandonment took place in the city or outside of it. Under the statute, as I read it, where both the husband and wife are residing in the city and he refuses to support her, by reason of which she is in

danger of becoming a burden upon the public, then he may be proceeded against, and it is of no importance where the abandonment originally took place because his refusal in the city to support her may be treated, so far as the city is concerned, either as an abandonment or leaving her.

This view is sustained by People ex rel. Lichtenstein v. Hodgson, 126 N. Y. 647, 27 N. E. 378. There a proceeding was brought before a police justice to compel a husband to support his wife, and he was directed to pay a certain amount each week and to give an undertaking securing such payment. The husband appealed from the order, and pending the appeal he was again arrested for a failure to support his wife after having been directed to do so. He sought to obtain his discharge from arrest by writ of habeas corpus on the theory that the prior order was a bar to the second proceeding. The court held it was not a bar; that:

"He was at large and in a condition where it was possible for him to discharge the obligation cast upon him by law to support his wife according to his means and for his neglect to provide for her support he committed a new offense and exposed himself to the new complaint and conviction, and the previous conviction for his neglect and refusal at that time to support his wife furnished no defense to the second proceeding. At any time subsequent to his first conviction, when he neglected to support his wife according to his means, he committed a new offense for which he could be arrested and tried, and these proceedings could be repeated until he consented to support his wife or gave an undertaking for her support, or until he was actually in prison under some conviction."

The judgment appealed from, therefore, should be affirmed. All concur.