THE PEOPLE OF THE CITY OF NEW YORK, Respondent, *v.* FRED SPEAR, Appellant.

Court of Special Sessions, City of New York, Appellate Part, First Judicial Department, October 31, 1928.

*Caruthers Ewing*, for the appellant.

*George P. Nicholson, Corporation Counsel [Arthur H. Kerns and J. Joseph Lilly of counsel], for the respondent.*

MURPHY, J. The relationship of the complainant and appellant is that of father and son. The ground of appeal is that the magistrate was without jurisdiction to hear and determine for the reason that the complainant was not, and is not now, a resident of the State of New York, but that he resides in the State of New Jersey.

It was established by evidence that the complainant was in the city of New York at the time of the trial and intends to remain; that he is destitute of funds, that he is sick and unable to work to support himself, and, therefore, likely to become a charge on the city.

It is not necessary, in my opinion, to look further to establish jurisdiction in the court directing the order. The fact that the complainant was at various times in other States and once voted in the State of New Jersey, I regard as unimportant. It is enough to know that he is actually physically here, sick and in want and likely at any time to become a public charge, irrespective of where his legal residence may be.

If this proceeding had not been brought and the complainant was found lying in the street and without funds, it would become the duty of the police to arraign him before a magistrate, and he would eventually find himself in a public institution where he would be housed, fed and clothed — a very substantial charge upon the city.

The statute under which this order was directed was intended to forestall just such a condition.

No other point is raised in this appeal.

My vote is for affirmance.

HERBERT, J., concurs; KERNOCHAN, P. J., dissents.

KERNOCHAN, P. J. (dissenting). This is an appeal from a judgment of the City Magistrates' Family Court of the Borough

of Manhattan, adjudging the defendant a disorderly person in that he failed to support the complainant, his father, who being sixty-nine years old and ill, was unable to work to maintain himself and being without means was in danger of becoming a burden on the public. The defendant, appellant, having been adjudged a disorderly person on these allegations was ordered to pay to the complainant fifteen dollars per week and was placed on probation to comply with this order.

It is admitted that the defendant, appellant, is a man of means and is presumably able to comply with this order. The evidence supports the finding of the magistrate that the complainant is ill and that on account of his infirmities and age is in danger of becoming a charge on the public, although this is disputed by the defendant.

The chief contention of the defendant is, however, that the evidence proves that the complainant has no settlement in the city of New York, and, therefore, the Magistrates' Court has no jurisdiction to try the case.

To justify the Family Court in adjudging the defendant a disorderly person it must be established that the complainant had a settlement in the city of New York, for otherwise he would not be a charge upon the city. The statute upon which the complainant rests states that in order to adjudge a child a disorderly person for failing to support a parent it must be shown that there is a liability that the parent, a poor person, is liable to be a charge upon the public. (Inferior Criminal Courts Act, § 74, subd. a.) This legislation was enacted in so far as support of parents is concerned to protect the city of New York from supporting one of its poor if a child of sufficient means can be found to lift the burden from the shoulders of the public to its own, where indeed it rightfully belongs. It was not intended to protect any other town or county in another State should they be liable for the poor person's support, for the statute declares that the action shall be brought in the name of the city of New York. (Inferior Criminal Courts Act, § 74, subd. b.)

I, therefore, hold that the residence or settlement of the complainant in the city of New York must be proved in order that the magistrate shall have jurisdiction.

Let us now examine the evidence as to the residence or settlement of the complaining witness. This evidence is contained in the testimony of the complainant's physician, Dr. Seward, a witness called by the city. Dr. Seward testifies that the complainant has been a patient of his for the past twelve years and that he is still his patient. On cross-examination the doctor said that he did not

know if the complainant lived in Madison, N. J.; that he lives there part of the time and in New York, and that he commutes. He further said that he had always treated him in Madison. As to the frequency of the visits the doctor said that he had seen him every year, some times several times a year; some times as frequently as twice and three times a week and then several months would elapse.

The complainant testified that he lived at the Walton Hotel in New York city for fifteen years and that he had voted from there. In 1921 or 1922 he left the Walton Hotel and since that time had traveled about a great deal in New Jersey and Connecticut following the races, as he was an owner and trainer of trotting horses. He admits that he made many visits to Madison where he boarded with a family called de Hart at 48 Green avenue, and that he voted in Madison in 1924 or 1923. He can show no permanent place of abode in New York city since leaving the Hotel Walton, but says that he lives in rooming houses on West Fiftieth street and when he cannot get accommodations there he goes to the Christopher Hotel.

He states in his complaint in this action that he lives at 317 West Fiftieth street. The evidence shows that his residence there was not continuous.

From this evidence it is established beyond any doubt that for the fifteen years that he lived at the Hotel Walton he had a legal settlement in New York city. It is also clearly established that of his own volition he gave up that settlement and settled in Madison, N. J., for he voted there in 1923 and 1924. There is no evidence to show that he ever gave up his settlement in Madison, N. J., and re-established one in New York city. He came to New York at frequent intervals; he was in Madison just as frequently and varied his stoppings in those two places by trips to other parts of New Jersey and to Greene Farms, Conn.

To entitle him to the benefit of the Poor Law of this State it was necessary for him to regain his settlement in New York, for he had given this up at the time he voted in New Jersey. To regain settlement in New York city he must show that he has resided there for one year. (Poor Law, § 40.)

There is nothing in the evidence to show that he ever did anything to regain his residence in the city of New York. For this reason I feel that he has failed to establish a fact that is vitally necessary for him to establish if the Magistrates' Court is to have jurisdiction in this case. For this reason I vote to reverse on law and facts and to dismiss the complaint.