ANONYMOUS, Petitioner, *v.* ANONYMOUS, Respondent.

Domestic Relations Court of New York, Family Court, New York County, March 26, 1941.

*Teiger & Teiger* [*Milton J. Teiger* of counsel], for the petitioner.

*Davies, Auerbach, Cornell & Hardy* [*Julien T. Davies* and *Ralph C. Williams, Jr.*, of counsel], for the respondent.

SICHER, J. Petitioner, seventy-four years, old, seeks an order of this court requiring respondent, her only child and now a mature adult, to contribute from his personal means towards petitioner's support periodic sums sufficient to bring up to a total of fifty dollars a week the aggregate of such supplementary contributions and of petitioner's slender earnings as portrait painter and of the income from a trust of which she is sole life beneficiary and he is sole trustee and a remainderman.

Respondent's motion to dismiss the petition must be granted, as a matter of law.

Although petitioner is a professional artist of distinguished accomplishments and formerly derived from commissions at least $12,000 a year, latterly her earnings have diminished to such an uncertain and negligible amount that, I am satisfied from the evidence, she is not able at this time to gain a livelihood by her personal efforts. (Cf. *City of New York* v. *Wasserman*, 196 N. Y.

Supp. 325.) However, on April 1, 1929, out of a then inheritance, she created a voluntary irrevocable trust from which she received as life beneficiary a net income of $1,146 during 1938, $1,180 during 1939, $1,115.50 during 1940, and from which, the stipulated documentary evidence and respondent's testimony show, there will in all likelihood be approximately $1,100 available for ratable weekly distribution to petitioner during 1941. The principal and income of that trust have now shrunk much below the original figures; and, accustomed to a luxurious standard of living in a milieu of wealth and culture and being a lady of artistic temperament and improvident habits, petitioner genuinely considers an income of $1,100 a year dire destitution and is doubtless suffering actual privation.

The proceeding in this court is a sequel to protracted litigation in which petitioner unsuccessfully sought to set aside the aforementioned deed of trust and to recapture the principal. (249 App. Div. 719; motion for leave to appeal denied, 273 N. Y. 678, and reargument thereof denied, 274 id. 490.)

That litigation and the demeanor and mutual recriminations of the parties upon the hearings in this court evince a deep-seated, unnatural antagonism between petitioner-mother and respondent-son. No purpose would be served by a detailed narrative of petitioner's absorption in her career to the subordination of ordinary domestic interests, her divorce, the estrangement from the husband's family, the son's unsettled childhood, and petitioner's life-long incapacity to keep within her income. A mere enumeration of those aspects should suffice to explain, at least partially, respondent's indifference to the ancient maxim, " Despise not thy mother when she is old " (Proverbs XXIII, line 22), and to the modern dictum that " No friendly relationships can ever be maintained upon a strictly legal basis. * * * This would be a strange world if people were no better than the law allows." (CRANE, J., in *Field* v. *Field*, 79 Misc. 557, 558.) All efforts for an informal adjustment of this latest controversy between embattled mother and son have unhappily proved fruitless; respondent stands upon his cold denial of petitioner's frantic assertion of a non-existent legal right.

Respondent " may be ungenerous, but generosity is a voluntary attribute and cannot be enforced even by a chancellor." (*Graf* v. *Hope Building Corp.*, 254 N. Y. 1, 4.)

Surprisingly, at common law no duty rests upon a child to support his parent. (*Ulrich* v. *Ulrich*, 136 N. Y. 120, 123; *Edwards* v. *Davis*, 16 Johns. 281, 285; *Herendeen* v. *DeWitt*, 49 Hun, 53–55; *Harrigan* v. *Cahill*, 100 Misc. 48–50; *Matter of Salm*, 171 id. 367; affd., 258 App. Div. 875.)

" By the law of nature a man was bound to take care of his own father and mother; but there being no temporal obligation to enforce the law of nature, it was found necessary to establish it by Act of Parliament." (*Rex* v. *Munden*, 1 Strange [K. B.], 190; 93 Eng. Reprint, 465.)

" The liability of a child to support its parents, who are infirm, destitute, or aged, was created in England and here by statute. The statute in that respect created duties unknown to the common law." (*Ulrich* v. *Ulrich, supra,* at p. 123.)

And because the legal obligation of offspring for parental support is statutory only, such liability cannot be extended beyond the terms of the particular statute creating it nor be enforced except to the extent and in the manner therein prescribed. (*Edwards* v. *Davis, supra; Herendeen* v. *DeWitt, supra; Harrigan* v. *Cahill, supra;* 48 C. J. p. 511.)

The prototype of all legislation of that genre in this country is " An Act for the Relief of the Poor," passed in the forty-third year of the reign of Queen Elizabeth (see *People* v. *Hill*, 163 Ill. 186, 191, 192; 46 N. E. 796), although there are variations in the language and scope of the current statutes among the several States. Thus, in Minnesota the " poor relative " statute is so worded that it has been construed as " not dealing with the rights of one claiming or given public support " but, instead, as being applicable " to any poor person who for any reason is unable to earn a livelihood " (*Howie* v. *Gangloff*, 165 Minn. 346; 206 N. W. 441); so, too, the analogous statute in Pennsylvania has been interpreted as " intended for the comfortable maintenance of parents and not merely in relief of the poor district." (*Commonwealth* v. *Schaffer*, 38 D. & C. [Pa.] 217. See, also, *Tulin* v. *Tulin*, 124 Conn. 518, 520; 200 A. 819; and *Belden* v. *Belden*, 82 Conn. 611; 74 A. 896.) But in New York State, despite enlargement of the category of persons embraced, the primary, and an essential, objective of the legislation now in force still is, like that of chapter 2 of 43 Elizabeth, the protection of the public purse. (Cf. *Goetting* v. *Normoyle*, 191 N. Y. 368.)

Originally, the statutory liability of a child for the support of any " poor, blind, lame or decrepit " parent within the State of New York was provided for in the Revised Statutes. (*Harrigan* v. *Cahill, supra,* at pp. 49, 50; *Edwards* v. *Davis, supra,* at p. 285.) But the broader present provisions are contained in section 125 of the Public Welfare Law, and section 914 of the Code of Criminal Procedure, and, within the city of New York, in subdivisions 3 and 9 of section 92, subdivision 4 of section 101 and the last sentence of section 131 of the Domestic Relations Court Act of the City of New York.

Section 125 of the Public Welfare Law reads:

" Liability of relatives to support. The husband, wife, father, mother, grandparent, *child* or grandchild of a *recipient of public relief* or of a *person liable to become in need of public relief* shall, if of sufficient ability, be responsible for the support of such person." (Italics supplied.)

Section 914 of the Code of Criminal Procedure, as amended by chapter 589 of the Laws of 1933, is now substantially identical with section 125 of the Public Welfare Law.

But, as remarked in *Matter of Salm* (*supra*, p. 371), concerning the two statutes just cited: " The remedy afforded by these provisions, however, is for the benefit of the community sustaining the burden of the parent's support; only public officials can enforce the remedy." So, foundation for the petition herein must be sought in the above-mentioned provisions of the Domestic Relations Court Act of the City of New York.

The enumeration of the powers conferred on the Family Court Division of this statutory court specifically includes the power:

" (3) To require of persons legally chargeable with the support of a * * * poor relative and who are possessed of sufficient means or who are able to earn such means, the payment weekly, or at other fixed periods, of a fair and reasonable sum for such support, or as a contribution towards such support, according to the means of the persons so chargeable; provided, however, that the amount that the court may require a respondent to pay for the support of the petitioner shall not exceed fifty dollars a week." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [3].)

" (9) To require the support by those legally chargeable therewith of a dependent adult who is unable to maintain himself *and* is likely to become a public charge; evidence that he is without means shall be *presumptive proof* of his liability to become a charge upon the public and the respondent shall be deemed to be of sufficient financial ability to contribute to his support unless the contrary shall affirmatively appear to the satisfaction of the court or a justice thereof; the court to determine and apportion the amount that each such relative shall be required to contribute, as may be just and appropriate in view of the circumstances of the case." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [9].) (Italics supplied.)

" (4) The * * * children * * * of a dependent adult who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, *and* who is unable to maintain himself *and* is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative. The court shall determine and

apportion the amount that each such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means." (N. Y. City Dom. Rel. Ct. Act, § 101 subd. 4.) (Italics supplied.)

" * * * a dependent adult without means to maintain himself shall be presumed to be likely to become a public charge." (N. Y. City Dom. Rel. Ct. Act, § 131.)

It should be noted that residence within the city of New York, inability to maintain himself, *and* the likely possibility of becoming a public charge are *all* jurisdictional prerequisites. Unless those *three* elements are present, the statutory liability does not arise nor become enforcible in this court. Since the language of subdivision 4 of section 101 of the Domestic Relations Court Act is conjunctive, the absence of any one of those three factors is fatal.

Petitioner satisfies the first (residential) requirement; and, for purposes of this decision, it will be assumed that her age, habits, temperament and special needs are such that she is a " dependent adult who is unable to maintain " herself upon an income of $1,100 per annum. But the third prerequisite is lacking. The recipient of an income of nearly twenty-two dollars a week is unquestionably not " likely to become a public charge; " for, the possessor of such resources — however inadequate they may seem to this petitioner, or for her actually are — would be ineligible for public aid. That income is about double the maximum sum which the department of welfare of the city of New York is accustomed or authorized to allow any applicant for old age assistance; indeed, the amount of petitioner's present income from the trust fund doubtless exceeds the budget of multitudes of entire family groups within the city of New York who would be ineligible for public aid because of their having that much income.

It necessarily follows that the Legislature has not conferred upon this court, or, indeed, any other court in this State, the power to satisfy the particular needs of this petitioner, however real, acute and appealing. The omission of the common law to enforce the natural obligation of an adult child for support of his aged parent has been cured in the State of New York only to the extent of casting upon offspring, of sufficient ability, the duty of indemnifying the community against the cost of maintaining the parent out of public funds (save, perhaps, to the conditional further extent assumed in the below dictum). Here there is no present occasion to enforce respondent's latent duty to indemnify the public in respect of petitioner. Even if her earnings had wholly ceased and she were childless, the public would not be burdened with her support to any extent whatever, unless and until the trust income will

have dwindled below such amount as the department of welfare of the city of New York could allow to a qualified applicant for old age assistance or other public aid.

For the foregoing conclusion that petitioner is not at this time a person " likely to become a public charge " there is also the controlling authority of *Matter of Mothner* v. *Mothner* (243 App. Div. 629.)

Unconvincing is the argument for petitioner that, because " assets sufficient for one person may be poverty for another " and because she is suffering actual want from inability to budget and live upon an income of about twenty-two dollars a week, she is for those reasons a person " likely to become a public charge." Obviously, public subsidies must be based upon *average* needs and *average* standards, not individual idiosyncrasies. The test of the likelihood of a person's becoming a public charge is not that individual's special demands but rather what constitutes the norm for eligibility for old age assistance or other public aid.

Specious also is the further argument that this petitioner, being unable to maintain herself on $1,100 per year, " shall be presumed to be likely to become a public charge " by virtue of the above-quoted presumption provisions of subdivision 9 of section 92 and section 131 of the Domestic Relations Court Act. Such presumption is here fully overcome by affirmative evidence showing that petitioner has an income more than sufficient to preclude the possibility of her becoming a public charge for the time being.

Finally, there is no validity in the still further argument that the limiting proviso in subdivision 3 of section 92 of the Domestic Relations Court Act —" the amount that the court may require a respondent to pay for the support of the petitioner shall not exceed fifty dollars a week "— necessarily implies the power to direct this respondent to pay to this petitioner up to that maximum sum. Such argument disregards the opening words in that subdivision, whereby the concluding proviso is applicable only to " persons *legally chargeable* with the support of a \* \* \* *poor relative* " who is, or is likely to become, a public charge. I assume, without deciding, that the language of subdivision 3 of section 92 of the Domestic Relations Court Act is broad and elastic enough to confer power to award to a person coming within the statutory category of a " dependent adult who is unable to maintain himself and is likely to become a public charge," and, as such, entitled to support from relatives " legally chargeable therewith," an amount (up to fifty dollars a week) in excess of the low subsistence level of public relief budgets. But even if such theory be assumed and conceded *arguendo*, nevertheless it would be applicable only to an individual who comes within the above-described statutory category. Unless

that condition precedent is fulfilled, this court would lack jurisdiction to order *any* measure of support whatever. That there may be hardship and even injustice in such distinction is also assumed. But a court, especially one of enumerated powers only, must keep within its sphere and not attempt to prescribe a statutory remedy which does not exist because not yet created by the Legislature.

For all the foregoing reasons the petition must be, and it hereby is, dismissed as matter of law. Order to that effect is being entered and filed today.

Such dismissal of this petition is, of course, without prejudice to the filing of a new petition when and if the necessary jurisdictional facts hereafter occur. (See *Anonymous* v. *Anonymous*, 173 Misc. 244; *Wignall* v. *Wignall*, 163 id. 910.)

Four copies of this memorandum are being filed with the original; and the clerk of this court is hereby directed to mail or deliver two copies to the attorneys for petitioner (one of them for delivery to her by such attorneys) and two copies to the attorneys for respondent (one of them for delivery to him by such attorneys). The clerk will also please furnish to the attorneys a copy of the order being entered today.