WILLIAM B. " KETCHAM," Petitioner, *v.* ADELAIDE " KETCHAM," WILLIAM B. " KETCHAM," JR., MARGUERITE K. " FLANNIGAN," GERARD " KETCHAM " and FLORENCE " KETCHAM," Respondents.*

Domestic Relations Court of New York, Family Court, Bronx County, June 20, 1941.

* This opinion as here published substitutes fictitious surnames and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act.

*William C. Chanler, Corporation Counsel* [*Rose Schneph* and *Harry Hollander* of counsel], for the petitioner.

*Louis Masheb,* for the respondents Adelaide " Ketcham," William B. " Ketcham," Jr., and Gerard " Ketcham."

SICHER, J. Petition has been filed by a father, upwards of sixty-five years of age, alleging destitution and asking support contributions from five children, all of them now adults and *bona fide* residents of the State of New Jersey.

Neither respondent Marguerite K. " Flannigan " nor respondent Florence " Ketcham " has been served with process nor found within the State of New York, and those two are, therefore, not yet subject to mandate of this court.

However, the other three respondents, Adelaide " Ketcham," William B. " Ketcham," Jr., and Gerard " Ketcham," were personally served with summons within the city of New York, have duly appeared by attorney, and moved to dismiss the petition for lack of residential jurisdiction and also upon the ground that petitioner is not a " dependent person * * * who is unable to maintain himself and is likely to become a public charge." (Dom. Rel. Ct. Act, § 101, subd. 4.)

Decision was reserved and all the evidence taken provisionally.

After study of the briefs and supplemental personal research, both of those grounds for dismissal are hereby overruled and the petition is sustained for the following-stated reasons.

Petitioner has been a resident of the city of New York continuously since leaving his wife and children in New Jersey about thirteen years ago. The evidence of such residence is adequate and substantially uncontroverted.

It is conceded that respondents Adelaide " Ketcham," William B. " Ketcham," Jr., and Gerard " Ketcham " are *bona fide* residents of the State of New Jersey but that each of them is employed and earns a livelihood within the city of New York, regularly commutes to the borough of Manhattan for that purpose, and was served with the summons at such respective place of employment within the city of New York.

It is also unquestioned that this is a statutory court, of limited jurisdiction, possessing only such powers as have been granted to it by the Legislature. In contrast with a court of general jurisdiction, there is no presumption in favor of the jurisdiction of this court but all facts essential thereto must in each instance be affirmatively established.

Section 91 of the Domestic Relations Court Act provides, in part:

" § 91. Jurisdiction. The Family Court shall have

" (1) Jurisdiction *within the city* to hear and determine *all* proceedings to compel the support of a wife, child or poor relative;" (Italics supplied.)

Section 92 of the Domestic Relations Court Act, as amended May 2, 1941, provides, in part:

" § 92. Powers. In the exercise of its jurisdiction the court shall have power * * *

" (9) To require the support by those legally chargeable therewith of a dependent adult who is unable to maintain himself and is likely to become a public charge; the court to determine and apportion the amount that each such relative shall be required to contribute, as may be just and appropriate in view of the circumstances of the case."

That particular function is further defined in subdivision 4 of section 101 of the Domestic Relations Court Act reading:

" The parents, the grandparents, the *children* and the grandchildren of a dependent person over seventeen years of age, *who has been a resident of the city at any time during the twelve months preceding the filing of the petition* for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative. The court shall determine and apportion the amount that *each* such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means." (Italics supplied.)

Section 131 of the Domestic Relations Court Act, as amended May 2, 1941, also provides, in part:

" § 131. * * * presumptions. * * * a respondent shall, *prima facie*, be presumed to have sufficient means to support his wife, child, stepchild, grandchild, parent, grandparent, and a dependent adult without means to maintain himself shall be presumed to be likely to become a public charge."

Section 101 of the Domestic Relations Court Act, subdivision 4 of which is above quoted in full, consists of five subdivisions, together defining the support obligations of the several classes of legally chargeable respondents. Subdivision 1 deals with the

liability of a husband for support of his wife and children; subdivision 2 deals with the liability of a mother for the support of her child if the father is dead or incapable of supporting it or cannot be found within the State; subdivision 3 defines the secondary liability of the grandparents of a grandchild under the age of seventeen years; subdivision 4, above quoted, deals with the liability of children, among other relatives, of a dependent adult who is a resident of the city of New York, unable to maintain himself and likely to become a public charge; and subdivision 5 deals with the limited liability of a stepparent.

Then follows section 102 of the act, reading:

" § 102. Punishment for failure to support. A person chargeable with the support of another as provided in section one hundred and one who fails to provide such support is guilty of non-support and may be punished by imprisonment in jail for not exceeding twelve months."

Next comes section 103, which is the foundation of respondents' argument on the question of jurisdiction, and is, therefore, quoted in full:

" § 103. Residential jurisdiction. A husband or father may be required to furnish support or may be found guilty of non-support, as provided in the two preceding sections, if, at the time of the filing of the petition for support,

" (a) he is residing or domiciled in the city; or

" (b) he is not residing or domiciled in the city but is found therein at the time, provided that the petitioner is so residing or domiciled at the time of the filing of the petition for support and is so residing or domiciled at the time of the service of such summons or warrant; or

" (c) he is neither residing nor domiciled nor found in the city but prior to the time of the filing of the petition for support and, while so residing or domiciled, he shall have failed to furnish such support or shall have abandoned his wife or child and thereafter shall have failed to furnish such support, provided that the petitioner is so residing or domiciled at such time."

Thus section 103 contains, under three subdivisions, express provisions as to " residential jurisdiction " over husbands and fathers but no other type of respondent.

Subdivision (a) embraces *any* case in which at the time of the filing of the petition the husband or father is residing or domiciled in the city of New York, regardless of the residence or domicile of the petitioner or the place of abandonment or non-support. As previously commented: " In such a situation it is quite immaterial that petitioner is a non-resident of the city and State of

New York or that the abandonment or non-support occurred outside the city of New York. The legislative purpose is clear that the Family Court Division of Domestic Relations Court of the City of New York should be a forum open to wives, wherever resident or domiciled, if at the time the wife invokes the aid of this court the husband has meanwhile established either a residence or a domicile within the city of New York. Otherwise, a husband, by establishing for himself a permanent abode and place of livelihood within the city of New York and remaining away from the jurisdiction where the wife resides or is domiciled or the abandonment occurred, might devise immunity and strip her of remedy. For, in such kind of situations an action for separation could not be maintained in the Supreme Court of the State of New York for want of the jurisdictional conditions specified in section 1162 of the Civil Practice Act." (*Kemp* v. *Kemp*, 172 Misc. 738, 743.)

Subdivision (b) deals with the combination of (1) a petitioner residing or domiciled in the city of New York at the time of the filing of the petition for support and also of the service of process and (2) a husband or father who is not then residing or domiciled in the city, and indeed may never have so resided or been domiciled, but is found, and served with a summons or warrant, within the city of New York.

The constitutionality of that subdivision (b) was assailed and sustained in *Matter of Buoneto* v. *Buoneto* (278 N. Y. 284). Therein the Court of Appeals, reversing the Appellate Division, Second Department, affirmed an order of the Domestic Relations Court of the City of New York which overruled respondent's challenge to the jurisdiction on the ground that he was a non-resident of the city of New York; the scope of the unanimous decision of the Court of Appeals appearing from the first headnote: " Section 18 of article 6 of the State Constitution providing that the Legislature shall not confer upon any inferior or local court of its creation any greater jurisdiction than is conferred upon County Courts by that article does not prohibit the Legislature from granting to local courts jurisdiction over non-resident defendants who are served with process within the territorial limits of their jurisdiction. The restriction is solely as to subject-matter."

Subdivision (c) deals with the combination of (1) a petitioner residing or domiciled in the city of New York at the time of the filing of the petition and (2) a husband or father who is then neither residing nor domiciled nor found in the city of New York but previously, and while so residing or domiciled, shall have failed to furnish support or abandoned his wife or child within the city of New York and thereafter have failed to furnish such support. Over such a husband or father the Family Court is expressly per-

mitted to acquire jurisdiction by service of a summons or warrant anywhere within the State of New York.

Respondents do not claim that it is beyond the constitutional power of the Legislature to confer upon the Family Court jurisdiction over a non-resident respondent other than a husband or father by service of process within the city of New York. Such contention would be futile in the face of *Matter of Buoneto* v. *Buoneto (supra)*. But it is earnestly urged that the Legislature, whether intentionally or inadvertently, omitted to exercise such constitutional power in respect of non-resident respondents sought to be charged with liability for support of a " dependent adult."

Such narrow interpretation, however, is negatived by settled principles of statutory construction, collated and admirably phrased in Book I of McKinney's Consolidated Laws of New York, Annotated.

True, the above-quoted section 103 of the Domestic Relations Court Act is captioned " Residential jurisdiction " and consists of specifications of required conditions for jurisdiction over husbands and fathers only but no other class of respondent. And from that premise respondents argue the specious conclusion that the enactment, in section 103, of specifications for jurisdiction over certain husbands and fathers who are not residents of the city of New York and the omission therein of express provisions as to any other class of respondent together indicate an intention of the Legislature to exclude jurisdiction over all non-resident respondents except husbands and fathers or, if not so intended, constitute at least an omission to provide for their inclusion.

But that argument proves too much. For, if *express* provision for residential jurisdiction be indispensable, then the absence from section 103 of residential jurisdiction directions concerning *any* respondent except husbands or fathers might leave the Family Court without grant of power to proceed against *any* mother, stepparent, grandparent, child or grandchild, *whether resident or non-resident*.

Of course, no such void exists.

" An absurd or frivolous purpose is not to be attributed to the Legislature. * * *." (McKinney's Consolidated Laws of New York, Annotated, Book I, § 81, p. 147); " The intention is not lightly to be imputed to the Legislature of solemnly enacting a statute which is ineffective. Hence, as between two constructions of an act, one of which renders it practically nugatory and the other enables the evident purposes of the Legislature to be effectuated, the latter is preferred. * * *." (McKinney's Consolidated Laws of New York, Annotated, *supra*, § 80, pp. 145, 146.)

Other pertinent principles of statutory construction, also quoted

from Book I of McKinney's Consolidated Laws of New York, Annotated, are these:

" § 57. \* \* \* The general purpose and spirit underlying the enactment of a statute are material considerations determining the meaning which shall be attached to its language. \* \* \* After the ascertainment of the purpose, the statute is construed with it constantly in view; and a narrow construction which would defeat the purpose of the act is to be avoided. *A particular provision of a statute is not to be given a special meaning at variance with the general purpose of the statute, unless it is clear that the Legislature so intended.* \* \* \*." (pp. 116–118; italics supplied.)

" § 59. \* \* \* It is an important rule in the interpretation of statutes that all parts of an act are to be read and construed together in order to determine the legislative intent. In short, a statute is construed as a whole. *A few general expressions detached from their context do not reveal the purpose of the statute as a whole.* \* \* \*." (pp. 119, 120; italics supplied.)

" § 60. \* \* \* One of the general rules in the interpretation of statutes is, that, if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment. This rule is closely allied to the general principle that all parts of a statute shall be read together. In fact, the two rules seem to be but little more than different expressions of the same canon of interpretation. Inconsistency in the same statute is thought to be contrary to the intent of the lawmakers, and hence it is to be avoided. \* \* \*." (pp. 121, 122.)

" § 75. \* \* \* Wherever the provision of a statute is general, everything which is necessary to make such provision effectual is supplied by the common law. The courts cannot, of course, supply matters omitted from a statute by the Legislature; but, *whatever is necessarily implied in a statute* is as much a part thereof as if written therein. \* \* \*." (p. 139; italics supplied.)

" § 77. \* \* \* It is one of the fundamental rules in the interpretation of statutes that of two constructions which can be given an ambiguous statute, that which will cause objectionable results is to be avoided. \* \* \*." (p. 142.)

" § 78. \* \* \* The fact that public inconvenience will result from a proposed construction of a statute is a circumstance which indicates that such construction is against the legislative intent. \* \* \*." (p. 143.)

" § 79. \* \* \* It is a general rule in the interpretation of statutes that they shall receive a reasonable construction. A forced, unnatural, or ridiculous construction, which might tend to bring contempt upon the administration of justice, is to be shunned. \* \* \*." (p. 144.)

" § 83. * * * A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination *Especially is discrimination to be avoided where it is in favor of non-residents* or foreign corporations. *Ordinarily, the State statutes will not be interpreted so as to give non-residents* or foreign corporations *greater privileges or powers than are enjoyed by residents* and domestic corporations. * * *." (p. 150; italics supplied.)

Complementary to the foregoing principles of statutory construction, there is also operative the further basic doctrine that in litigation constituting its subject-matter *every* court, *in the absence of express limitation,* has jurisdiction over *all* persons duly served with process within its territorial limits. (See 21 C. J. S. § 74, p. 112, and cases cited.)

Thus, in *Matter of Washburn* (12 Misc. 242) it was held that upon personal service of the citation the jurisdiction of the Surrogate's Court — also a statutory tribunal of limited and enumerated powers — became complete over the person served, although a non-resident; the opinion stating:

" It is provided by section 2520 of the Code of Civil Procedure how citations shall be served within the State.

" After declaring what the manner of service shall be, the section reads: ' A citation must be so served within the county of the surrogate, or an adjoining county, at least eight days before the return day thereof; if in any other county, at least fifteen days before the return day.' Nowhere in the section do we find that such service shall be made only upon residents of the State, and it would seem that if there is no other section qualifying the one cited, the jurisdiction of the surrogate is complete over any person or corporation sought to be brought into court by such service, irrespective of the question of residence, when the service is made within the State either eight or fifteen days prior to the return day, as the case may be. I find none." (*Matter of Washburn, supra,* 243, 244.)

" It requires clear and unmistakable language to deprive the local courts of the city of New York of jurisdiction over causes of action originating within the territorial limits of the tribunal, and where the defendant, if a non-resident, is served within the boundaries of the city * * *." (*Worthington* v. *London G. & A. Co.,* 164 N. Y. 81, 85.)

Section 122 of the Domestic Relations Court Act provides for the form and issuance of summons after receiving the petition; section 127 prescribes the method of service thereof, and subdivision (23) of section 92 confers power to send such summons or other mandate of the Family Court into any county of the

State for service. Nowhere in the act is there mention of, or distinction between, residents and non-residents, except in the above-quoted subdivision 4 of section 101 and section 103, nor any limitation of service of process to the city of New York (instead of the entire State) except in subdivision (b) of section 103. And, as appears elsewhere herein, the residential provisions in section 103 are enlarging rather than restrictive.

To prevent encroachment on the prerogatives of the Supreme Court and to preserve the " great and fundamental privilege of defendants to have small cases brought in local courts heard in their own territory " (*American Historical Society* v. *Glenn*, 248 N. Y. 445, 453), the Legislature of the State of New York has restricted money actions in County Courts to those in which all the defendants reside within the county or have places of business therein (Civ. Prac. Act, § 67, subd. 3) and it has restricted to the city of New York the territorial scope of process of the City Court of the City of New York (New York City Court Act, § 27; cf. *American Historical Society* v. *Glenn, supra*) and of the Municipal Court of the City of New York. (Mun. Ct. Code, § 14.)

Those express restrictions are doubtless motivated by the above-mentioned purpose of safeguarding small money action defendants against litigation at a distance from home. And since suits for money damages are primarily matters of private concern, there is usually absent therefrom the public interest aspect which is the sole consideration in " poor relative " proceedings, and a material factor in all other support proceedings, in the Domestic Relations Court of the City of New York. Such difference of purposes has caused the Legislature, on the one hand, to restrict the residential jurisdiction of the County Courts, City Court of the City of New York and Municipal Court of the City of New York, and, on the other hand, to enlarge such jurisdiction of the Domestic Relations Court of the City of New York.

Except for alimony and maintenance orders and decrees incident to actions for divorce, separation and annulment in the Supreme Court of the State of New York (also a statutory jurisdiction only; see *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456), the Domestic Relations Court of the City of New York has been vested with *exclusive* jurisdiction of *all* proceedings within the city of New York to compel the support of a wife, legitimate child or " poor relative." (Dom. Rel. Ct. Act, § 91, subd. 1.) Support is never a matter of merely private concern; there is always an underlying public interest, symbolized by the fact that this court was created on October 1, 1933 (Laws of 1933, chap. 482), by the merger of the then Children's Court of the City of New York and of the Family Court which had up to then been part of the criminal courts'

system of the city of New York into a new civil tribunal (*Matter of Kane* v. *Necci*, 269 N. Y. 13) for the socialized treatment of support and other family legal problems.

So, too, under a predecessor statute (Greater New York Charter, § 685), a husband had been ordered to contribute toward the support of a wife living apart from him in New York city after his having deserted her abroad (*People ex rel. Comr. of Public Charities* v. *Wexler*, 152 App. Div. 67), upon the theory that " the burden upon the city is precisely the same if it supports a wife, whether the abandonment took place in the city or outside of it " (*People ex rel. Comr. of Public Charities* v. *Wexler, supra*, 69); and the earlier decision of *People* v. *Crouse* (86 App. Div. 352), was disapproved with the criticism that in it " the main purpose of the statute was overlooked, viz., the public interest." (*People ex rel. Comr. of Public Charities* v. *Wexler, supra*, 69.)

The public interest, of course, is the paramount consideration in any proceeding under subdivision 4 of section 101 of the Domestic Relations Court Act for the support of a dependent adult. The primary objective of the statutory liability therein imposed is protection of the public purse. (Cf. *Goetting* v. *Normoyle*, 191 N. Y. 368; see *Anonymous* v. *Anonymous*, 176 Misc. 103, 105–108).

If petitioner in the case at bar be unable to maintain himself, his support as a public charge would fall upon the city of New York. Being a non-resident of New Jersey he would be ineligible for public assistance in any locality of that State; doubtless an attempt on his part to compel support by his children through any court in New Jersey would be met by the contention that they are under no legal liability to him under the New Jersey statutes. For, a " legal settlement " in that State is prerequisite to the enforcement of the duty of indemnifying the community against the support of the " poor relative " seeking such maintenance. (N. J. Stat. Anno. [Permanent ed.] 44:1–141.)

The relevance of that distinction is illustrated by the converse situation in *People* v. *Spear* (133 Misc. 141), arising under section 74 of the former Inferior Criminal Courts Act (Laws of 1910, chap. 659, as amd. by Laws of 1919, chap. 339). In that case the Court of Special Sessions of the City of New York, Appellate Part, First Judicial Department, affirmed an order directing defendant to pay fifteen dollars a week for the support of his aged father, although a resident of the State of New Jersey, upon the ground that " it is enough to know that he is actually physically here, sick and in want and likely at any time to become a public charge, irrespective of where his legal residence may be " (*People* v. *Spear*, 133 Misc. 141, 142); and the majority opinion goes on to state: " If this proceeding had not been brought and the complainant was found lying

in the street and without funds, it would become the duty of the police to arraign him before a magistrate, and he would eventually find himself in a public institution where he would be housed, fed and clothed — a very substantial charge upon the city."

Similarly, KERNOCHAN, P. J., dissented on the ground that the evidence did not show that the complainant had ever " regained his settlement " in the city of New York so as to entitle him to the benefit of the then Poor Law of this State (Poor Law, § 40), saying: " This legislation was enacted in so far as support of parents is concerned to protect the city of New York from supporting one of its poor if a child of sufficient means can be found to lift the burden from the shoulders of the public to its own, where indeed it rightfully belongs. It was not intended to protect any other town or county in another State should they be liable for the poor person's support  *  *  *." (*People* v. *Spear, supra,* 143.)

The superseding statute now in force and the basis of the instant proceeding (Dom. Rel. Ct. Act, § 101, subd. 4) is consistent in applying the principle of indemnifying the city of New York, invoked in both the majority and dissenting opinions in *People* v. *Spear (supra).* Because the real party in interest is the city of New York, said subdivision 4 provides for " poor relative " proceedings only in behalf of residents of the city of New York, *i. e.,* persons who would be eligible for public aid in, and so likely to become public charges of, the city of New York.

Thus, subdivision 4 of section 101 of the Domestic Relations Court Act *does* contain a residential jurisdiction requirement; it is immaterial that the words " residential jurisdiction " do not appear as an introductory title, as in section 103 of the act. (McKinney's Consolidated Laws of New York, Annotated, Book I, § 94, p. 160.) For the clear objective of the statute is the safeguarding of the public purse of the city of New York. In view of such objective it is patently immaterial whether the persons legally chargeable with the duty of indemnifying the city of New York against the cost of public charge maintenance of a " poor relative " petitioner are residents or non-residents of the city of New York. It is enough that they can be brought before the court, on due notice, like any resident of the city of New York, and have their day in court.

A different kind of " residential jurisdiction " is provided for in section 103 of the said act, dealing with husband and father respondents, and contemplating the broader and more numerous types of support duties of those two classes of persons chargeable. As already stated, subdivision (a) of that section confers jurisdiction in cases where only one party (respondent) is a resident of the city of New York, and subdivisions (b) and (c), conversely, cover cases

where the wife or child resides in the city of New York at the time of the filing of the petition but the respondent-husband or father is a non-resident. Thus, said section 103 extends, rather than restricts, the residential jurisdiction of the court. Moreover, subdivision 4 of section 101 of the Domestic Relations Court Act, as well as each of the subdivisions of section 103 thereof, specify that only one side (petitioner or respondent) need be a resident. In said section 103 the specifications are fuller; but the intent of said subdivision 4 is also clear to the effect that the only residence requirement therein is one imposed on the petitioner and that there is no such requirement in respect of any respondent.

For the foregoing reasons I hold that this court has jurisdiction to enter against each of the respondents who has been served with summons within the city of New York an order requiring him or her severally to contribute such sum " as may be just and appropriate in view of the circumstances of the case and their respective means." (Dom. Rel. Ct. Act, § 101, subd. 4.)

The fact that only some, and not all, of petitioner's children are now before the court does not relieve from liability the respondents over whom jurisdiction had been acquired. The liability under the statute is expressly stated to be several; moreover, it is a general principle that lack of jurisdiction over one defendant does not defeat jurisdiction over a severally liable codefendant. (*Denver & R. G. W. R. Co* v. *Terte,* 284 U. S. 284.) A court may assume jurisdiction over an action against a non-resident over whose person it has acquired jurisdiction, although it has not acquired jurisdiction over the person of non-residents jointly liable with him. (*Bates* v. *Reynolds,* 20 N. Y. Super. Ct. 685.)

(There are here omitted the remaining portions of the opinion, dealing with the particular facts of the bases for support orders against the three respondents over whom the court has acquired jurisdiction.)

I direct that the following named respondents shall pay into this court the following sums of money, semi-monthly, on the first and fifteenth days of the month, beginning July 1, 1941: Respondent No. 1 (Adelaide " Ketcham "), $5; respondent No. 2 (William B. " Ketcham," Jr.), $3.50; respondent No 4 (Gerard " Ketcham "), $2; for the support of petitioner until the further order of this court.

Petitioner is referred to the old age assistance division of the department of welfare of the city of New York for such, if any, supplemental assistance as his condition may justify from time to time.

Notice shall be given to the parties and attorneys pursuant to the subjoined direction.