S. Samuel Di Falco, S.
Objections to the account of the administrator have been filed by the Commissioner of Welfare of the City of New York and the Commissioner of Hospitals. Both objectants challenge the rejection of their respective claims and the allowance of two claims presented by children of the decedent. The Commissioner of Welfare also objects to the amount expended for the funeral of the decedent. The only asset of the estate, aside from household effects of trivial value, is a sum received by the administrator from the New York City Employees ’ Retirement System, representing compensation and ordinary death benefits payable to the decedent as the beneficiary designated by her son, who had been employed by the City of New York. The decedent died on November 5, 1963. Her son had died in January, 1959. There appears to have been a claim made to the fund by another person. In any event it was not collected during the decedent’s lifetime.
The larger portion of the claim of the Commissioner of Hospitals had been reduced to judgment during the lifetime of the decedent, and that judgment is not now disputed as a preferred claim. (Surrogate’s Ct. Act, § 212.) The balance of the claim is small and is no longer being disputed.
The decedent was granted public assistance by the City of New York for an extended period of time. The present claim covers the time between October, 1953 and the date of her death. In January, 1956 proceedings were instituted in the Family Court Division of the Domestic Relations Court against the son of the decedent (who is the administrator) and a daughter, as a result of which the daughter was ordered to contribute $5 a week to the support of her mother and the son, $100 a month. There is a difference between the computations made by the son and by the daughter and the computation made by the Department of Welfare. The son claims a total of $9,400, and the daughter, $1,930, while the Department of Welfare has allowed a credit for all such payments in the total sum of $8,810. The gross estate approximates $33,500, The claim of the Depart *1057 ment of Welfare exceeds $39,000, and it contends that it is entitled to be paid its claim before any payment at all can be made to the son or daughter. No statutory preference is claimed, the assistance having antedated the amendment (Social Welfare Law, § 104, as amd. by L. 1964, ch. 573) which accords a preference oil welfare claims (Matter of Herman, 44 Misc 2d 585). The son and daughter claim a status as general creditors equal to that of the Welfare Department and they seek prorata payment on account of the respective claims.
The claim of the Welfare Department against the estate for assistance rendered to the decedent is based upon an agreement by the recipient, implied by law, to repay the amount of assistance so granted. (Social Welfare Law, § 104; Matter of Brodine, 10 A D 2d 414, 416, affd. 13 N Y 2d 734.) It is not disputed that public assistance was given to the decedent in an amount in excess of the gross estate, although there is dispute as to the precise amount of the estate’s obligation.
At common law, no legal obligation rested upon a child to support an indigent parent. (Rutecki v. Lukaszewshi, 273 App. Div. 638; Matter of Salm, 171 Misc. 367, affd. 258 App. Div. 875, affd. 282 N. Y. 765; Matter of Morrissey, 183 Misc. 530.) Liability of a child for the parent’s support is now imposed by statute (Social Welfare Law, § 101, formerly Public Welfare Law, § 125; Family Ct. Act, § 415 [L. 1962, ch. 686], formerly Code Crim. Pro., § 914; N. Y. City Dom. Rel. Ct. Act, § 101; 18 Carmody-Wait, N. Y. Practice, pp. 621, 655-656). Some of the statutes can be enforced only by a public welfare officer (Matter of Salm, supra, p. 371; Anonymous v. Anonymous, 176 Misc. 103, 106) while others can be enforced on the petition of the person in need (18 Carmody-Wait, supra, pp. 621, 622).
In this case the payments by the children were admittedly made under compulsion of the Family Court (N. Y. City Dom. Rel. Ct. Act, § 5) and consequently were ordered pursuant to the authority granted that court in subdivision 4 of section 101 of that act. The statute explicitly provides that the liability for support arises in the case of one of the relatives specified “ who is unable to maintain himself and is likely to become a public charge ’ ’. The probability of becoming a public charge has been held to be a jurisdictional prerequisite in such a proceeding. (Anonymous v. Anonymous, 176 Misc. 103, 107, supra; Matter of Mothner v. Mothner, 243 App. Div. 629.) It has been said that the ‘ ‘ public interest * * * is the paramount consideration in any proceeding under subdivision 4 of section 101 of the Domestic Delations Court Act for the support of a dependent adult. The primary objective of the statutory liability therein *1058 imposed is protection of the public purse. ” (“Ketcham” v. “ Ketcham ”, 176 Misc. 993,1002.)
In no case is an unconscionable or unreasonable burden placed upon the near relatives. Section 101 of the Social Welfare Law predicates the responsibility upon a finding of ‘ ‘ sufficient ability ” to pay on the part of the relative. Section 101 of the New York City Domestic Relations Court Act empowered the court to ‘1 determine and apportion the fair and reasonable sum that each person shall be required to contribute, as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means. ” (See, Also, Family Ct. Act, § 415.) Hence it happens, as it did in this case, that the near relatives are able to assume only a part of the expense of maintaining the indigent person and the public must bear part of the expense.
If the dominant purpose of these related statutes is to relieve the public treasury of support and to place the burden, in part at least, upon certain close relatives, that purpose would be frustrated by giving these relatives a right of recovery from the indigent person equal to that of the public who had been forced by circumstances to bear some of the burden. Payment by a relative for such support, made under compulsion of a court order, has been held to subrogate such relative to the claim of the Welfare Department against the person who received the assistance. (Matter of Modafferi, 174 Misc. 789; Matter of McClancy, 182 Misc. 866, 868, affd. 268 App. Div. 876, affd. 294 N. Y. 760.) Subrogation is an equitable doctrine. (4 Pomeroy’s Equity Jurisprudence, § 1419; Gerseta Corp. v. Equitable Trust Co., 241 N. Y. 418, 425; 3105 Grand Corp. v. City of New York, 288 N. Y. 178,182.) It should not be applied in a way that will defeat the purpose of the statute which created the respective rights and obligations of all who are involved, the public, the recipient, and the near relatives. It would make no sense to impose an obligation upon a relative in order to relieve the public treasury from that charge and then to give to the relative a right to recover from the recipient, equal to that of the public. If the purpose of the statute is to place that burden, to a reasonable extent, upon the family rather than upon the public, that purpose cannot be achieved by allowing the family to shift to the public a part of the burden that has been equitably and reasonably allocated to it. The plain purpose of the statute is to place as much of the charge upon the family as the court shall determine to be just, reasonable and proper, and that objective requires that whatever rights the relatives should have against *1059 the recipient must be subordinate to the right of the public to be reimbursed for what the family could not or did not contribute^
It is suggested that after the death of her son, the decedent possessed an asset of substantial value, that the Family Court would have been under a duty to terminate the support orders if that fact had been brought to its attention, and that this court, as a court of equity, should accomplish that result by directing reimbursement to the children for all payments made after January, 1959. It is a sufficient answer to this argument to say that all of the necessary facts have not been developed in the record. It appears from the attorney’s affidavit of services that the decedent’s right to the fund was not unchallenged. The daughter testified that she knew of the fund about a month aftei her brother’s death. There would have to be adequate explanation of these facts before the court could consider the question of its authority to make the requested directions.
The court, therefore, holds that the claim of the Welfare Department is entitled to payment prior to any payment to the children on account of their claims for reimbursement. In view of the size of the claim of the Welfare Department and the deficiency of estate assets, the precise amount of the claim may not be important. If any party desires fixation of the exact amount of the claim and the proper credits against it, the matter will be restored to the calendar on request.
There is no objection to the compensation requested by the attorney for the administrator, and it is allowed in that amount. His disbursements may be taxed in a proper bill.
The objection to the funeral bill is overruled. Under all of the circumstances of this case the court finds that the total burial expense of the decedent was not unreasonable.