CHARLES ULRICH, Appellant, *v.* EDWARD ULRICH, as Executor, etc., Respondent.

A parent may make a valid contract with a child to pay for support and care, and there is no presumption of law arising from the relationship against the existence of such a contract.

In an action by a son to recover for services alleged to have been rendered by himself and wife, in caring for his mother during her lifetime, at her request and upon her promise to pay therefor the court charged that "As a general rule children are bound to care for their parents in their old age, and * * * the presumption of law is against such a claim as has been advanced in this action." *Held,* error.

(Argued October 26, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made January 11, 1892, which affirmed a judgment in favor of defendant entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nelson Smith* for appellant. The court erred in charging the jury that the presumption of law was against such a claim as advanced in this action, and the exception thereto was well taken. (*McQueen* v. *Babcock*, 3 Abb. Ct. App. Dec. 132; *Barrett* v. *Meyer*, 10 Hun, 109, 110; *Bank* v. *Gifford*, 40 Barb. 659; *U. Bank* v. *Bassett*, 3 Abb. Pr. 359; *Grant* v. *McLachlin*, 4 How. Pr. 216; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Bean* v. *Kiah*, 4 Hun, 17; *Cuck* v. *Quackenbush*, 13 id. 107; *Filer* v. *N. Y. C. & H. R. R. R. Co.*, 49 N. Y. 47.) The court erred in charging the jury that children were bound to care for their parents in their old age, and the exception thereto was well taken. (Code Crim. Pro. § 914; Laws of 1886, chap. 593, § 1.) The court erred in overruling the plaintiff's objection to the question put to Martin Geisler: " Q. Was there ever any knowledge by you, or any notice,

either before or after his mother's death, that he made a claim for the services of himself and his wife, or either of them, to the mother ? "   And the exception was well taken.   ( *Worrall* v. *Parmelee*, 1 N. Y. 519 ; *Erben* v. *Lorillard*, 19 id. 299, 302 ; *Foote* v. *Beecher*, 78 id. 155, 157 ; *Waring* v. *U. S. T. Co.*, 44 How. Pr. 69, 75 ; *Lowery* v. *Steward*, 25 N. Y. 239 ; *Hawley* v. *Hatter*, 9 Hun, 134 ; *Baird* v. *Gillett*, 47 N. Y. 186 ; *Fairlie* v. *Denton*, 3 C. & P. 103.)

*Edward W. S. Johnston* for respondent.   The plaintiff cannot recover on a *quantum meruit*.   (*Spraker* v. *Dow*, 16 N. Y. S. R. 297 ; *Collyer* v. *Collyer*, 12 id. 878 ; *Kearney* v. *McKeon*, 85 N. Y. 137 ; *Ross* v. *Ross*, 6 Hun, 184 ; *Moore* v. *Moore*, 6 Abb. Ct. App. Dec. 303 ; *Carpenter* v. *Weller*, 15 Hun, 134 ; *Hall* v. *Finch*, 29 Wis. 278 ; *Updike* v. *Titus*, 13 N. J. Eq. 152 ; *Griffin* v. *Potter*, 14 Wend. 210 ; *Williams* v. *Hutchinson*, 3 N. Y. 319 ; *Andrus* v. *Foster*, 17 Vt. 560 ; *Fitch* v. *Peckham*, 16 id. 150 ; *Shakespear* v. *Markham*, 72 N. Y. 400 ; *Ulrich* v. *Arnold*, 120 Penn. St. 170 ; *Houck* v. *Houck*, 99 id. 552 ; *Lewis* v. *Trickey*, 20 Barb. 387.)   The entire evidence as to this alleged contract between the testatrix and the plaintiff's wife is based upon the testimony of the wife of the plaintiff, from whom the plaintiff now derives his title. It was incompetent and improper under section 829 of the Code.   (*Porter* v. *Dunn*, 131 N. Y. 314 ; *Smith* v. *Cross*, 90 id. 549 ; *Rowe* v. *Comley*, 11 Daly, 319 ; *Kavanaugh* v. *Wilson*, 70 N. Y. 179.)   The court must consider that plaintiff has appealed from the order denying his motion for a new trial, and that this order denying his motion does not state the grounds upon which it is made.   (*Gray* v. *N. Y. F. E. Co.*, 13 Wkly. Dig. 40 ; *Alfaro* v. *Davidson*, 7 J. & S. 463 ; 40 id. 289 ; *McAleer* v. *Corning*, 49 id. 522 ; *Reilley* v. *D. & H. C. Co.*, 102 N. Y. 383.)   The plaintiff did not ask for a direction of a verdict in his favor.   By omitting to do so he is precluded from alleging that the verdict is either contrary to or against the weight of evidence.   (*Sickels* v. *Gillies*, 45 How. Pr. 94 ; *Hamilton T. A. R. R. Co.*, 3 J. & S. 118 ; *Rowe* v. *Stevens*,

2 id. 436 ; *Aldridge* v. *Aldridge*, 120 id. 614.)    The presump-
tion of law is against the liability for services of this character.
(*Shakespeare* v. *Markham,* 72 N. Y. 400 ; *Ulrich* v. *Arnold*,
120 Penn. St. 170 ; *Kearney* v. *McKeon*, 85 N. Y. 137 ;
*Harriman* v. *Sampson*, 23 Ill. App., 159 ; *Lynn* v. *Lynn*, 29
Penn. St. 369 ; *Woods* v. *Evans*, 113 Ill. 186 ; Code Crim.
Pro. § 914.)

Gray, J.    The plaintiff brought this action against the
executor of his mother's will to recover from her estate the
value of services, which he alleged had been rendered by him-
self and his wife to his mother at her request.    A jury rendered
a verdict for the defendant, and the only question which
demands our consideration, upon the plaintiff's appeal from a
judgment affirming the defendant's recovery, arises upon the
exception of the plaintiff to a part of the trial judge's charge.
After stating what the action was for, the trial judge said :
"As a general rule children are bound to care for their parents
in their old age, and filial affection should prompt children to
do so.    The consequence is that the presumption of law is
against such a claim as has been advanced in this action."    The
plaintiff excepted to this portion of the charge and insists that
it was an erroneous instruction to the jury.

The trial judge, it is true, continued by charging that "if
the plaintiff has overcome the presumption by proof and has
clearly shown that the services sought to be recovered for were
rendered by himself and his wife pursuant to his mother's
express promise, the plaintiff is entitled to recover."

Under the facts of the case, as they had appeared in the
evidence, the charge relating to the obligations of children,
and as to the legal presumption, was such as possibly to convey
to the minds of the jurors an erroneous understanding of the
law.    It may well be that the trial judge had before his own
mind the moral aspect of the case and did not intend that his
observations should have any other weight with the jury than
as moral reflections ; but the nature of the case, the sequence
of the remarks and the stage of the case, or the circumstances

under which uttered, were such as, in my judgment, to require us to grant a new trial.

There is no presumption of law against the maintenance of such a claim. If the plaintiff had established to the satisfaction of the jury the existence of an agreement between his parent and himself, under which he and his wife were to attend upon and to care for her, and she was to pay for such services, he was entitled to their verdict as much as he would be upon any other valid claim.

A presumption has been defined to be a rule of law that courts and judges shall draw a particular inference from particular facts, or from particular evidence, unless and until the truth of the inference is disproved. (Steven's Dig. Law of Evid. chap. 1, art. 1.)

No presumption existed here as a presumption of law. The right to draw any presumption as to the fact of an agreement having been made from the other fact of the relationship between the parties was within the exclusive province of the jury. (*Justice* v. *Lang*, 52 N. Y. 323.)

There is no rule of law which compels an inference from the fact of such a relationship against the existence of an agreement by the parent to compensate the child for services to be rendered. The law does presume where there is no proof of a contract, under which the services were performed, that there was no promise, or agreement, to pay for them; that is, that they were gratuitous. That is the general rule. So far as the relation of parent and child is concerned, it is quite as competent for the parent to contract with his adult child for support and care and a claim for the compensation due thereunder is quite as valid, as it would be in any other case between individuals. The liability of a child to support its parents, who are infirm, destitute, or aged, was created in England and here by statute. The statute in that respect created duties unknown to the common law. (Reeves' Dom. Relations, 284; 1 Blacks. Com. 448; *Edwards* v. *Davis*, 16 Johns. 281.)

Had the trial judge confined his observations to the sugges-

tion that filial affection should prompt children to take care of
their parents in their old age, I should find no reason for crit-
icising the correctness of his charge.   But the state of the case
was such as that, with the moral sense alert and naturally
quick to respond to impressions adverse to the plaintiff's claim,
the jury would readily attach great weight to all expressions
of the judge presiding at the trial, which cast a doubt upon
the validity of the claim.

In every case, to determine whether the error pointed out
has been such as to prejudice the party, the court may consider
the nature of the case and how delicately the scales were bal-
anced between the parties.   Here the plaintiff had shown by
the evidence of his wife that, after the death of her husband,
the testatrix, who was very aged and feeble, told plaintiff
and his wife to stay on with her and that she would pay them
for the work they did ; that she gave as a reason her helpless
condition; that they remained with her until her death, and
during that time performed many more or less important ser-
vices in nursing and caring for her, and that she repeatedly said
she would pay them, without mentioning any amount.   Her
evidence was more or less corroborated· by that of witnesses,
who, variously, testified to hearing the old woman state that she
made the plaintiff and his wife stay with and take care of her
and that she would pay them, or that she would "make it all
right with them."   In opposition, the defense gave evidence to
show that plaintiff and wife received board and lodging ; that
the deceased was an active woman and not dependent upon
others for services, or in need of care; that plaintiff was a
shiftless fellow and would occasionally drink to excess, and
that, under the will of deceased, plaintiff received an equal
interest in her estate with the other children.   When the evi-
dence was all in and the case ready to be sent to the jury for
their verdict, while the plaintiff's evidence of an agreement
that they should remain and care for the deceased and that
their services were to be paid for was uncontradicted by direct
evidence, it was seriously attacked by evidence of facts, which,
if it did not make the agreement appear an improbable one,

yet was of such a nature as might justify the jury in discrediting the evidence for the plaintiff.

On the one side was positive evidence, which, if believed, entitled plaintiff to a verdict. According to the evidence given for the plaintiff, there were no rambling expressions of a sense of obligation, or of promises to make compensation by testamentary provisions. There was a request to remain and an agreement to pay for the work to be done. On the other side, there was circumstantial evidence negativing, or tending to negative, the making of the alleged agreement, which the jury were at liberty to accept and upon which they could base a verdict for the defendant. In that condition of things, the just balance of their minds might be disturbed and their judgment easily led by any suggestion from the trial judge, which seemed to militate against the legality of plaintiff's claim and which would seem to accord with an aversion of the moral sense. It appears from the record that at the conclusion of the evidence but little time was left and that the trial judge hastened, as he said, to "finish the case this evening," and he made a very brief charge; in which he left it to the jury to say whether the plaintiff had "made out a case which meets every requirement of the law as he had laid it down." He had in mind, I do not doubt at all, that he had, previously, merely commented upon the obligation from child to parent, as such exists in nature, and not as having led them to believe that any rule of law stood in the way of such a claim in such cases. But I am constrained to the belief that prejudice may have been worked to the plaintiff's case by the observations of the trial judge. He had observed that it was "a general rule that children are bound to take care of their parents in their old age," and that "the consequence" of that rule and of the promptings of filial affection was "that the presumption of law was against such a claim as had been advanced in this action."

Both statements were incorrect as legal propositions; for, of course, there is no such general rule of law, nor such a presumption. Coming from the lips of the judge, from whom

they were to take the law applicable to the case, can we, and should we, say that they had no influence upon the minds of the jury, or that, if they did have, the error was cured by the subsequent instruction to the effect that "if the plaintiff had overcome the presumption by proof" he might recover? I think not. This was essentially a case for decision by a jury upon the evidence before them, as they believed the facts and weighed the probabilities. They might well have understood that there was a rule of law, which amounted to a presumption, against the validity of such a contract and claim, and the plaintiff should, therefore, have a new trial; in which a verdict may be reached without the possible influence of an erroneous idea leading to its formation.

The judgment should be reversed and a new trial ordered, with costs to the appellant, to abide the event.

All concur, except ANDREWS, FINCH and O'BRIEN, JJ., dissenting.

Judgment reversed.