(158 App. Div. 832.)

SEAMAN v. JAMISON et al.

(Supreme Court, Appellate Division, Second Department. November 7, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*) — EVIDENCE — SERVICE BETWEEN PERSONS IN FAMILY RELATION.

In an action against the executors of plaintiff's mother to recover for services performed for her father and mother, evidence that the father said he would give her wages, but that he could not do so until he sold a house, and that the mother "said the same thing," did not show an express promise by the mother to pay for the services.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

144 N.Y.S.—14

2. EXECUTORS AND ADMINISTRATORS (§ 221*) — PRESUMPTIONS — SERVICE BE-
TWEEN PERSONS IN FAMILY RELATION.

> Where the relationship between the parties is that of parent and child,
> the law presumes, as a general rule, that services were rendered gratui-
> tously in the absence of any proof of a contract to pay therefor.

> [Ed. Note.—For other cases, see Executors and Administrators, Cent.
> Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig.
> § 221.*]

Appeal from Trial Term, Kings County.

Action by Rosella E. Seaman against William Jamison and another,
as executors of Mary A. Jamison, deceased. From a judgment for
plaintiff, and an order denying a new trial, defendants appeal. Re-
versed, and new trial granted.

See, also, 146 App. Div. 428, 131 N. Y. Supp. 155.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON,
and PUTNAM, JJ.

Edward B. Bloss, of New York City, for appellants.
James J. FitzGerald, of New York City, for respondent.

STAPLETON, J. The plaintiff brought action against the exec-
utors of the last will and testament of her mother, Mary A. Jamison,
to recover the sum of $2,416.64—

> "for work, labor, and services done and performed for said Mary A. Jami-
> son, and her husband, Thomas Jamison, in their lifetime, at the special in-
> stance and request of said Mary A. Jamison * * * and Thomas Jamison
> during the latter years of their lives, and in and about the renting, cleaning,
> management, and care of the premises No. 351 46th street, borough of Brook-
> lyn, city of New York, as a house with furnished rooms for lodgers."

There was an allegation that the services were reasonably worth
$2,640, and that there had been a payment of $223.36, leaving the bal-
ance for which judgment was demanded. No proof of any payment
was offered. A verdict was rendered in favor of the plaintiff in the
sum of $1,408. From the judgment entered on that verdict, and from
the order denying a motion for a new trial, the defendants appeal.

For over 40 years Thomas Jamison and Mary A. Jamison, husband
and wife, lived together in the house No. 351 46th street in the bor-
ough of Brooklyn, where they eked out a livelihood by renting fur-
nished rooms. There they raised a family of 6 children. With the
passing of the years, the children left the home. The last to leave
was Matilda, who became Mrs. Burke. She lived with them "all her
life," and until a short time of her marriage, in her forty-third year.
The proof was sufficient to establish the fact that after Matilda left
the parents, then old and feeble, became sick, and were unable to take
care of themselves, or to attend to the wants of their lodgers; that
in this condition of their affairs, in August, 1901, the plaintiff, another
daughter, who had long been away from home, and had been support-
ing herself by her own earnings, returned to take care of them; and
that from that time until their death she lived with them, and per-
formed the duties mentioned and described in the complaint. Of the
nature and extent of the services, and the faithfulness with which they

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were performed, there is no doubt. Several witnesses testified to them, and no evidence was offered in contradiction.

[1] The only testimony given in an attempt to support an express promise to pay for the services was given by a Mrs. Kate Olsen, who lived in the house with the Jamisons. She testified as follows:

"Q. Now, did you, about the time that Mrs. Seaman came there, see Mr. and Mrs. Jamison in their house? A. Yes, sir. Q. And did you, about that time, hear any conversation between Mr. and Mrs. Jamison? A. Yes, sir; I did. Q. Did you hear them speak about Mrs. Seaman coming there? A. Yes, sir; I was there when she came in. Q. Now, will you tell the jury what you heard on that occasion? What did you hear? A. Mrs. Jamison got a little book, and gave it to Mr. Jamison to put down the day she came in there, and he put it down in the book. Q. Well, now, do you remember what was said by them? A. And he said that he would give her wages; but he couldn't give her any now, until he would sell the house. Q. What did Mrs. Jamison say? A. She said the same thing. Q. Now, I show you a book, and ask you if you know this book? A. Yes, sir; I do. That is Mr. Jamison's book. Mr. Bloss: I object to that book as incompetent, irrelevant, and immaterial. The Court: Objection overruled. Simply identify the book. Q. Do you know that book? A. Yes, sir; I do. Q. Had you ever seen that book? A. I often seen that book in 10 years, when I paid him the rent. Q. Your own name is in it, isn't it? A. Yes, sir. Q. I call your attention to an inscription on the page which the officer is showing you, and ask you if you remember that handwriting? A. Yes, sir; I do. Mr. Bloss: I object to that as incompetent, irrelevant, and immaterial. (Objection overruled. Exception to defendants.) Mr. FitzGerald: I offer in evidence the page. The Court: She has to identify the handwriting first. Q. Do you know in whose handwriting that is? A. That is Mr. Jamison's handwriting. Mr. FitzGerald: Now, I offer that page in evidence. (Objected to by counsel for defendants. Objection overruled. Exception to defendants. The page is admitted in evidence, and marked Exhibit No. 1.) During the time that I lived in the house I seen Mrs. Seaman working, and do all the work in the house. I often visited her while she was working. I have been down there most every night. I moved away from there 4 years ago."

This is how the memorandum read:

"Aug 23 1901
Zella commenced
taking care of
Papa and Mama."

The plaintiff was sometimes called Zella by the members of the family.

Mr. Jamison died on March 3, 1904. Mrs. Jamison lived until December 20, 1908. When he died he was 83. When she died she was 80.

Mrs. Jamison left a will by the terms of which she bequeathed $300 to each of 4 designated beneficiaries, and the balance of her estate equally among 4 children, one of whom was the plaintiff. In a codicil, dated November 7, 1908, a month before her death, she ratified the will, and provided, in order to settle with the "heirs," that the house be sold by private or public sale.

[2] The general rule is that, where the relationship between the parties is that of parent and child, the law presumes that, where there is no proof of a contract under which the services were performed, there was no promise or agreement to pay for them; that is, that they were rendered gratuitously. Ulrich v. Ulrich, 136 N. Y. 120, 123, 32

· N. E. 606, 18 L. R. A. 37. It is obvious from an examination of the testimony of the witness Olsen that it furnished no evidence which would authorize the jury to find any promise or agreement on the part of the testatrix to pay her daughter for the services rendered by the daughter to her husband and herself in his lifetime, or to her during the years she lived after her husband's departure. The only evidence relating to Mrs. Jamison was, "She said the same thing." What was the same thing? That Mr. Jamison said he would give her (plaintiff) wages, but could not give her any now, until he would sell the house. The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.

