ROSELLA E. SEAMAN, Respondent, v. WILLIAM JAMISON and
REUBEN FREEMAN, as Executors, etc., of MARY A. JAMISON,
Deceased, Appellants.

(Supreme Court, Second Department, November 7, 1913.)

DECEDENT'S ESTATE—ACTION BY CHILD TO RECOVER FOR SERVICES RENDERED
TO PARENTS—PROOF NOT JUSTIFYING RECOVERY.

Where, in an action to recover for services rendered to a decedent,
the relationship between the parties is that of parent and child, the
law presumes that the services were gratuitous in the absence of proof
of an express promise to pay.

Action by a daughter to recover for services rendered to her father
and mother during their lifetime. Evidence examined, and *held*, insuf-
ficient to establish a promise to pay for the services, and that a judg-
ment for the plaintiff should be reversed and a new trial granted.

APPEAL by the defendants, William Jamison and another,
as executors, etc., from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the
county of Kings on the 4th day of April, 1913, upon the verdict
of a jury, and also from an order entered in said clerk's office
on the 29th day of April, 1913, denying the defendants' motion
for a new trial made upon the minutes.

Edward B. Bloss, for the appellants.

James J. Fitz Gerald, for the respondent.

STAPLETON, J.—The plaintiff brought action against the ex-
ecutors of the last will and testament of her mother, Mary A.
Jamison, to recover the sum of $2,416.64 " for work, labor and
services done and performed for said Mary A. Jamison, and her
husband, Thomas Jamison, in their lifetime, at the special in-
stance and request of said Mary A. Jamison   *   *   *   and

Thomas Jamison during the closing years of their lives, and in and about the renting, cleaning, management and care of the premises No. 351 46th Street, Borough of Brooklyn, City of New York, as a house with furnished rooms for lodgers." There was an allegation that the services were reasonably worth $2,640, and that there had been a payment of $223.36, leaving the balance for which judgment was demanded. No proof of any payment was offered. A verdict was rendered in favor of the plaintiff in the sum of $1,408. From the judgment entered on that verdict, and from the order denying a motion for a new trial, the defendants appeal.

For over forty years Thomas Jamison and Mary A. Jamison, husband and wife, lived together in the house No. 351 Forty-sixth street, in the borough of Brooklyn, where they eked out a livelihood by renting furnished rooms. There they raised a family of six children. With the passing of the years the children left the home. The last to leave was Matilda, who became Mrs. Burke. She lived with them " all her life " and until a short time of her marriage, in her forty-third year. The proof was sufficient to establish the fact that after Matilda left them, the parents, then old and feeble, became sick and were unable to take care of themselves or to attend to the wants of their lodgers; that in this condition of their affairs, in August, 1901, the plaintiff, another daughter, who had long been away from home and had been supporting herself by her own earnings, returned to take care of them, and that from that time until their death she lived with them and performed the duties mentioned and described in the complaint. Of the nature and extent of the services and the faithfulness with which they were performed there is no doubt. Several witnesses testified to them, and no evidence was offered in contradiction.

The only testimony given in an attempt to support an express promise to pay for the services was given by a Mrs. Kate Olsen, who lived in the house with the Jamisons. She testified

as follows: " Q.   Now, did you, about the time that Mrs. Sea-
man came there, see Mr. and Mrs. Jamison in their house?   A.
Yes, sir.   Q. And did you about that time hear any conversa-
tion between Mr. and Mrs. Jamison?   A. Yes, sir, I did.   Q.
Did you hear them speak about Mrs. Seaman coming there?
A. Yes, sir; I was there when she came in.   Q. Now, will
you tell the jury what you heard on that occasion?   What did
you hear?   A. Mrs. Jamison got a little book and gave it to
Mr. Jamison to put down the day she came in there, and he
put it down in the book.   Q. Well, now, do you remember
what was said by them?   A. And he said that he would give her
wages, but he couldn't give her any now, until he would sell
the house.   Q. What did Mrs. Jamison say?   A. She said the
same thing.   Q. Now, I show you a book and ask you if you
know this book?   A. Yes, sir, I do.   That is Mr. Jamison's
book.   Mr. Bloss: I object to that book as incompetent, irrele-
vant and immaterial.   The Court: Objection overruled.   Sim-
ply identify the book.   Q. Do you know that book?   A. Yes,
sir, I do.   Q. Had you ever seen that book?   A. I often seen
that book in ten years, when I paid him the rent.   Q. Your own
name is in ·it, isn't it?   A. Yes, sir.   Q. I call your atten-
tion to an inscription on the page which the officer is showing
you, and ask you if you remember that handwriting?   A.
Yes, sir, I do.   Mr. Bloss: I object to that as incompetent,
irrelevant and immaterial.   [Objection overruled.   Exception
to defendants.]   Mr. Fitz Gerald:   I offer in evidence the
page.   The Court: She has to identify the handwriting first.
Q. Do you know in whose handwriting that is?   A. That is
Mr. Jamison's handwriting.   Mr. Fitz Gerald: Now, I offer
that page in evidence.   [Objected to by counsel for defend-
ants.   Objection overruled.   Exception to defendants.   The
page is admitted in evidence and marked Exhibit Number 1.]
During the time that I lived in the house I seen Mrs. Sea-
man working and do all the work in the house.   I often visited

her while she was working.  I have been down there most every night.  I moved away from there four years ago."

This is how the memorandum read:

"Aug 23 1901
Zella commenced
taking care of
Papa and Mama."

The plaintiff was sometimes called Zella by the members of the family.

Mr. Jamison died on March 3, 1904.  Mrs. Jamison lived until December 20, 1908.  When he died he was eighty-three; when she died she was eighty.

Mrs. Jamison left a will, by the terms of which she bequeathed $300 to each of four designated beneficiaries and the balance of her estate equally among four children, one of whom was the plaintiff.  In a codicil, dated November 7, 1908, a month before her death, she ratified the will and provided, in order to settle with the " heirs," that the house be sold by private or public sale.

The general rule is that, where the relationship between the parties is that of parent and child, the law presumes that where there is no proof of a contract under which the services were performed there was no promise or agreement to pay for them; that is, that they were rendered gratuitously.  (Ulrich v. Ulrich, 136 N. Y. 120, 123.)  It is obvious from an examination of the testimony of the witness Olsen that it furnished no evidence which would authorize the jury to find any promise or agreement on the part of the testatrix to pay her daughter for the services rendered by the daughter to her husband and herself in his lifetime or to her during the years she lived after her husband's departure.  The only evidence relating to Mrs. Jamison was, " She said the same thing."  What was the

same thing? That Mr. Jamison said he would give her (plaintiff) wages, "but he couldn't give her any now, until he would sell the house."

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., BURR, CARR and PUTNAM, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.