"GUISSEPPE VINCENZA", Petitioner, *v.* "FRANK VINCENZA" et al., Respondents.*

Domestic Relations Court of the City of New York, Family Court, New York County, June 5, 1950.

*John P. McGrath, Corporation Counsel* (*Mathilda Miller, Aaron Arnold* and *Max H. Finkelberg* of counsel), for petitioner and Department of Welfare of the City of New York.

No appearance for respondents.

SICHER, J. Question arises whether New York Uniform Support of Dependents Law (L. 1949, ch. 807) contemplates, or at least in its present form effectually provides for, a " poor relative " proceeding against children of a needy parent.

The petition herein alleges in substance that petitioner is seventy years old and the father of the five adult children named as respondents; that he is a "poor relative ", being without means, unable to work or otherwise to maintain himself and is in danger of becoming a public charge; that he resides in New York City; that the five respondents reside in Jersey City, New Jersey; that petitioner is entitled to support from those respondents under the provisions of the New York Uniform Support of Dependents Law; that New Jersey has enacted a law substantially similar and reciprocal to the New York Uniform

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details.

Support of Dependents Law; that the respondents have refused and neglected to provide fair and reasonable support for the petitioner according to their means and earning capacity; and that petitioner therefore " prays for such an Order for Support, directed to said respondents, as shall be deemed to be fair and reasonable ".

As used in the New York Uniform Support of Dependents Law, the word " ' Petitioner ' shall mean and include each dependent person for whom support is sought in a proceeding instituted pursuant to this act " (§ 2, subd. [e]); the word " 'Respondent ' shall mean and include each person against whom a proceeding is instituted pursuant to this act " (§ 2, subd. [f]); the words " ' Initiating state ' shall mean the state of domicile or residence of the petitioner " (§ 2, subd. [i]); and the words " 'Responding state ' shall mean the state wherein the respondent resides or is domiciled or found " (§ 2, subd. [j]).

New York Uniform Support of Dependents Law has not yet been the subject of any discovered published opinion.

Its enactment stemmed from wide-spread concern over the inadequacy of the impact of the criminal law on a deserting husband or father who had run away to another State. In addition to the restricted scope of such criminal law and the technical blocks to enforcement of every penal statute, extradition of an absconding spouse or parent is generally regarded by prosecuting authorities as disproportionately expensive, and his imprisonment after conviction is for the dependents a fruitless remedy.

" At the present time, there is no effective *civil* remedy to enforce support of abandoned wives or children where a father absconds to another state, leaving behind his dependents. The only legal hold upon such a person at present is a criminal process which is impractical because of expensive extradition costs, the limited nature of the criminal statute, and the fact that arrest of the husband or father destroys the source of wage earnings.

" The extent of the problem is shown by the fact that in one of the nation's more populous counties in 1947, the number of complaints covered 555 families having a total of over fifteen hundred children under 16 years of age. There are over 3,000 counties in the United States, and the problem is most serious in heavily populated centers. "

(Quoted from Manual of Procedure, entitled "Reciprocal State Legislation to Compel the Support of Dependent Wives and Children Within and Without the State ", issued February,

1950, by The Council of State Governments, 1313 East 60th Street, Chicago 37, Illinois.)

The proposed plan calls for the enactment of substantially similar and reciprocal *civil* statutes eventually in all the States, territories and possessions of the United States, designed to compel a deserting spouse or parent to support his or her dependents even though they reside in one State and he or she in another.

" Briefly, the following procedure to compel support may be employed among the states and possessions which have enacted this type of legislation:

" 1. In the state where the dependent is located, a proceeding is initiated in a local court. The judge certifies that a verified petition has been filed pursuant to the reciprocal act, indicates that the respondent cannot be located in that state, and transmits the necessary papers to the proper court in the state where the respondent may be.

" 2. In the state where the respondent is located, the judge of the proper court issues a summons to bring the respondent before him. The proceeding then moves forward in this second court, an order for support is issued, and support payments are collected and forwarded to the court where the proceeding was initiated for the benefit of the dependent." (Quoted from the afore-mentioned Council of State Governments Manual of Procedure.)

Doubtless actual practice will uncover administrative difficulties and gaps in the so-called model New York Uniform Support of Dependents Law for correction by appropriate amendments in the light of experience.

The instant situation examples one such gap.

As already stated, this novel legislation originated from a growing awareness of the great public need to supplement the criminal law touching deserting husbands and parents. The proposers of the ensuing New York Uniform Support of Dependents Law may have envisioned a plan to extend the new remedial legislation ultimately to include also *all* " poor relative " dependents. But no such widening of objectives is indicated in the above-quoted title of the Manual of Procedure issued by the Council of State Governments nor in the foreword or the interpretive statement therein contained. And the present form of the New York statute seems to me to express such broader purpose only in respect of a " poor relative " *child* " over the age of seventeen years who is unable to maintain himself and is

likely to become a public charge '' and not also in respect of a '' poor relative '' parent.

Thus, although section 1 recites: '' The purpose of this uniform act is to secure support in civil proceedings for dependent wives, children *and poor relatives* from persons legally responsible for their support '' (emphasis supplied) and subdivision (d) of section 2 provides: '' ' Dependent ' shall mean and include a wife, child, *mother, father,* grandparent or *grandchild* who is in need of and entitled to support from a person who is declared to be legally liable for such support by the laws of the state or states wherein the petitioner *and* the respondent reside '' (emphasis supplied), nevertheless, section 3, entitled '' *Persons legally liable for support of dependents* '', contains only provisions relating to support of wives by husbands, children under seventeen years of age (primarily by the father and secondarily by the mother) and for the several liability of both parents '' in one state   *   *   *   for the support of a child seventeen years of age or older residing or found in the same state or in another state having substantially similar or reciprocal laws, whenever such child is unable to maintain himself and is likely to become a public charge '' (§ 3, subd. [c]).

That is, although patterned on section 101 of the Domestic Relations Court Act of the City of New York, section 3 of the New York Uniform Support of Dependents Law wholly omits any express provision (analogous to N. Y. City Dom. Rel. Ct. Act, § 101, subd. 3) for chargeability of a grandparent with the support of a grandchild, and it likewise omits any express provision (analogous to N. Y. City Dom. Rel. Ct. Act, § 101, subd. 4) for the support of a needy parent by his or her adult children. The *sole* direction for liability for support of '' poor relative '' dependents is the aforementioned provision of subdivision (c) of section 3, for support of a child over the age of seventeen years who '' is unable to maintain himself and is likely to become a public charge.''

In the absence of such statutory imposition for a longer period a parent's common-law duty to support his or her offspring continues only during minority. So, the omission to include in section 3 of the New York Uniform Support of Dependents Law among the persons there declared legally chargeable for support of dependents the (adult) children of a '' poor relative '' parent is highly significant because of another established doctrine that at common law likewise no duty rests upon a child ·to support his parent. (*Ulrich* v. *Ulrich,* 136 N. Y. 120, 123; *Edwards* v. *Davis,* 16 Johns. 281, 286; *Herendeen* v. *De Witt,*

49 Hun 53–55; *Harrigan* v. *Cahill,* 100 Misc. 48–50; *Matter of Salm,* 171 Misc. 367, affd. 258 App. Div. 875.) "By the law of nature a man was bound to take care of his own father and mother; but there being no temporal obligation to enforce the law of nature, it was found necessary to establish it by Act of Parliament." (*Rex* v. *Munden,* 1 Str. [K. B.] 190; 93 Eng. Reprint 465.) "The liability of a child to support its parents who are infirm, destitute, or aged was created in England and here by statute. The statute in that respect created duties unknown to the common law." (*Ulrich* v. *Ulrich, supra,* p. 123.)

Accordingly, since the legal obligation of offspring for parental support is statutory only, such liability cannot be extended beyond the terms of the particular statute creating it nor be enforced except to the extent and in the manner therein prescribed. (See *Edwards* v. *Davis, supra; Herendeen* v. *De Witt, supra; Harrigan* v. *Cahill, supra;* 48 C. J., Paupers, p. 511, and *Anonymous* v. *Anonymous,* 176 Misc. 103.)

Moreover, although section 50 of the New York Penal Law makes it a felony for a man to abandon his wife "while she is pregnant and in destitute circumstances or liable to become a burden upon the public" and section 480 of the New York Penal Law likewise makes it a felony for a parent to abandon a "child under the age of sixteen years  *  *  * in destitute circumstances" and willfully to omit "to furnish necessary and proper food, clothing or shelter for such child", there is no comparable provision in the New York Penal Law concerning the abandonment of a parent but only in section 914 of the Code of Criminal Procedure a "disorderly person" chargeability of a child, "if of sufficient ability", for the support of a parent receiving or "liable to become in need of" public relief.

In addition, the residential jurisdiction requirements of the Domestic Relations Court Act of the City of New York limit chargeability for support of a "poor relative" parent thereunder to adult children residing in or found within the City of New York (N. Y. City Dom. Rel. Ct. Act, § 103, subd. 3, L. 1942, ch. 761, § 8, an amendment enacted to clarify the ambiguity discussed in "*Ketcham*" v. "*Ketcham*", 176 Misc. 993). Extension of chargeability for such "poor relative" parent support to a child residing outside of New York City and in another State should therefore be mandated unequivocally.

The arguments of counsel for the department of welfare of the City of New York (the real party in interest) are not persuasive.

The boundaries of the New York Uniform Support of Dependents Law cannot be enlarged by the implications of other statutes but are fixed by the four corners of chapter 807 of the Laws of 1949, as amended. That enactment expressly repealed chapter 709 of the Laws of 1948, which had merely conferred additional jurisdiction on the Domestic Relations Court of the City of New York and Children's Courts elsewhere in the State by a single new section; and such repealing 1949 statute purports to set forth separately within itself an entire scheme.

Pertinent therefore is the basic principle of statutory construction that any omission is to be remedied by the Legislature, not the courts (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 363): " If the Legislature fails to insert such provisions in the law as will accomplish the result intended, their omission cannot be remedied by construction, and the law must to that extent be considered defective and inoperative, the court having no power to interpolate words or phrases." (*Kennahan* v. *City of New York,* 162 App. Div. 364, 365–366, citing *Furey* v. *Town of Gravesend,* 104 N. Y. 405, 410.) " While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus,* however just and desirable it may be, to supply the omitted provision." (*McKuskie* v. *Hendrickson,* 128 N. Y. 555, 558; accord *Matter of Second Ave. M. E. Church,* 66 N. Y. 395.)

No incorporation of other statutes by reference is intended or achieved by section 8, reading: " *Construction of act.* This act shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter." That section simply safeguards against such claims, for example, as a plea that the New York Uniform Support of Dependents Law precludes prosecution under sections 50 or 480 of the New York Penal Law, or that subdivision (a) of section 5 of the New York Uniform Support of Dependents Law requires a proceeding under that statute instead of Domestic Relations Court Act of the City of New York even in a situation in which are present the residential jurisdiction requirements of section 103 of the New York City Domestic Relations Court Act.

In passing, it may be observed that the reciprocal New Jersey Uniform Support of Dependents statute (L. 1949, ch. 122; New Jersey Statute Annotated, tit. 9, art. 3, §§ 9:18–17.1–9:18–17.10) contains one provision which might well commend itself to the New York State Legislature, namely: " 9. Any legally liable person contemplated by section one hereof, who submits to the jurisdiction of the court of such other State, territory or possession of the United States and complies with any order of support made or entered by such court, shall be relieved of extradition under any indictment for desertion or nonsupport entered in the courts of this State during the period of such submission and compliance."

For all the foregoing reasons I have concluded, and hereby hold, that the existing New York Uniform Support of Dependents Law authorizes proceedings under it only against a husband, a father or a mother and not also against a grandparent or against the children of a needy parent.

In the second place, even assuming *arguendo* that such statute does confer subject-matter jurisdiction to entertain in New York an " initiating state " " poor relative " petition for orders of support against children residing or found in a " responding state ", nonetheless, as a matter of judicial discretion, no New Jersey court should be burdened with this particular case. Each of three of the respondents appears to be a married housewife and as such not chargeable with her parent's support except out of personal earnings or individual property (see " *Alessandro* " v. " *Camelli* ", 47 N. Y. S. 2d 237); any proposed orders would doubtless be strongly contested because the father is a chronic alcoholic — at the intake interview in this court he was visibly under the influence of liquor — who allegedly abandoned respondents during childhood and left them to be reared in institutions; and such misconduct of a father would in New Jersey free the wronged offspring from obligation to contribute to his support (New Jersey Statutes Annotated, tit. 44, art. 17, § 44:1–141). Even though no such exemption is recognized in New York but in this State an order for support of a needy parent is predicated wholly on exoneration of the public purse, whether or not he has forfeited all moral rights against his children (see " *Mendelsohn* " v. " *Mendelsohn* ", 192 Misc. 1014), nevertheless, this is not the type of case which a " responding state " court should be asked to handle, at least during the initial stage of evolving satisfactory co-operation in the administration of a novel statute designed in any event primarily to alleviate the evils of desertion of wives and children.

Possession of jurisdiction does not, *ipso facto,* require its use invariably. For example, it is well established that the Supreme Court of the State of New York, in its discretion, may accept or refuse jurisdiction of a tort action between residents of another State (see *Reep* v. *Butcher,* 176 Misc. 369, and cases collated at p. 370), and it may likewise entertain, or refuse, jurisdiction in an action between foreigners predicated on a commercial transaction in another country (see *De Flammercourt* v. *Ascer,* 167 Misc. 473, and *" Almandares "* v. *" Almandares ",* 186 Misc. 667, 674).

True, it has been authentically enunciated that " the courts of this state were primarily for the residents of this state. There must be some forceful and controlling reason entering into the very nature and essence of the action which would close their doors to its own citizens. * * * A selection between resident plaintiffs — opening the courts to one and closing them to the other — would probably run counter to the constitutional provisions of section 1 of the Fourteenth Amendment of the Constitution of the United States * * *." (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.,* 235 N. Y. 152, 159.) However, the same opinion goes on to state: " On the other hand, by a long line of authorities the courts have repeatedly refused in their discretion to entertain jurisdiction over causes of action arising out of a tort committed in a foreign state, where both the plaintiff and the defendant were *non-residents.* * * * The reason for this exception is stated in the cases, and the rule has been too firmly imbedded in our jurisprudence to justify modification without legislative action. The courts also have been obliged to reject litigation even by residents where it was futile and useless to assume jurisdiction." (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co., supra,* p. 160.)

Analogous considerations seem to me to justify, and indeed require, careful selectivity in asking another State to open the doors of its courts to nonresidents of that State under a novel statute rooted in a concept of comity. Adoption of a come-one-come-all policy toward petitioners who may turn to the overpublicized new legislation as a panacea, which, of course, it is not, would doom the experiment to failure. Better, therefore, to err on the side of circumspection against extending the new law during the experimental initial stage beyond its primary and original motivation and to avoid sending to a " responding state " cases of doubtful merit, such as the instant proceeding.

The petition is hereby dismissed, on the primary ground of lack of subject-matter jurisdiction, and, if such jurisdiction exists, then as a matter of judicial discretion.

Finally, such dismissal paves the way for an appeal through the corporation counsel of the City of New York, if so advised (cf. N. Y. City Dom. Rel. Ct. Act, § 59); and such appeal is recommended with a view to an appellate court determination for guidance not only of the Family Court Division of Domestic Relations Court of the City of New York but also for all officials anywhere interested in the administration of uniform support of dependents legislation modeled on the New York statute.

Notice shall be given pursuant to the subjoined direction.