"ALICE MAXIM", Petitioner, *v.* "LEONARD MAXIM", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, December 22, 1952.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*Edward L. Mollis* for petitioner.

*Arthur L. Gould* for respondent appearing specially.

SICHER, J. On July 14, 1952, petitioner filed in this court a standard form of petition alleging respondent's failure since about July 9, 1949, to provide fair and reasonable support for petitioner as his wife and their two young children according to his means and earning capacity and praying "for such an Order of Support, directed to said Respondent, as shall be deemed to be fair and reasonable, and for such other and further relief as the law provides."

Thereupon a summons was duly issued pursuant to Family Court Rule IV of Domestic Relations Court of the City of New York (Bender's Court Rules [1st ed.], p. 365). But on the July 18, 1952, return day respondent did not attend, although concededly he had personally received such summons in New York City on July 14, 1952. Instead, he departed for Oklahoma on July 15th, and on the return day an attorney appeared in his behalf specially and solely for the purpose of moving to vacate the summons and dismiss the proceeding on grounds of alleged immunity from service and lack of subject matter jurisdiction of this court.

By stipulation of counsel disposition has been deferred pending submission of affidavits and briefs and my examination of the Bronx County Clerk's entire file in the hereinafter-described separation action.

As gathered from the affidavits, briefs and correspondence and that separation action file the following facts are undisputed; only the legal conclusions therefrom are still the subject of controversy.

The parties duly married in New York City on December 1, 1945, and became the parents of the two children included as dependents in the petition, namely, " Samuel " (born July 10, 1946) and " Dorothy " (born November 27, 1948).

From their marriage until at least July, 1950, both parties resided continuously in New York City.

Petitioner and the children have continuously since resided, and are still residing, in New York City.

Respondent remained in New York City until the latter part of April or early part of May, 1951, when he went to Oklahoma City, Oklahoma, where he became employed originally at a salary of $50 a week and since January, 1952, at least $55 a week.

He has not been in New York City since the Spring of 1951, except for occasional short visits to his parents and children, and received the afore-mentioned summons during one such visit on July 14, 1952.

On August 22, 1951, petitioner had instituted in the Supreme Court, Bronx County, an action for a separation under articles 69–70 of the Civil Practice Act; the summons therein was duly served on respondent on August 23, 1951, in Oklahoma City, Oklahoma, pursuant to an appropriate order under the Civil Practice Act; upon respondent's failure to appear or answer the matter was referred to Official Referee LAPHAM, who recommended judgment for the plaintiff (petitioner herein) and a

total award of $30 a week for the maintenance of the wife and the two children; and a default judgment to that effect was entered in the Supreme Court, Bronx County, on February 21, 1952.

That judgment is in conventional form, granting petitioner a separation from defendant's bed and board forever, because of cruelty, abandonment, and failure or refusal adequately to support her and the infant issue of the marriage; it grants the mother custody of the two children and also $10 a week as permanent alimony for herself and $20 a week for the support of the two children, from February 21, 1952.

Thereafter, on April 9, 1952, respondent moved to strike out from that judgment those money provisions on the ground that the Supreme Court had not acquired in personam jurisdiction over respondent in the separation action. Such motion was granted by Supreme Court Justice VALENTE, and on May 8, 1952, he entered an order reading, in part:

" and it appearing that at the time of the commencement of this action the defendant was a resident and domiciliary of the State of Oklahoma and not a resident of the State of New York. * * *

" ' Ordered that said motion be and the same is hereby granted, and it is further ordered, adjudged and decreed that the aforesaid default decree of separation herein entered in the office of the Clerk of the County of Bronx on the 21st day of February, 1952 be and the same is hereby modified by striking and vacating therefrom the last paragraph thereof ' ". (I.e. the above-described money provisions.)

The granting of that motion was explained in the following memorandum published *sub nom. Markman* v. *Markman* (N. Y. L. J., May 5, 1952, p. 1793, col. 5).

" Motion by defendant to modify the decree by striking out the provision directing the payment of alimony is granted. The defendant was served in Oklahoma and did not appear, answer or defend. There is no proof of facts to overcome his allegations of non-residence. (*Reschofsky* v. *Reschofsky*, 272 App. Div. 694). Settle order."

*Reschofsky* v. *Reschofsky* (*supra*) held that in an action for separation against a nonresident defendant who is served by publication, although the court may render a default judgment effectively dissolving the marital status, it may not award alimony or a money judgment against the defendant where he does not appear generally, in the absence of a prior seizure of

his property in this State. The absent defendant may accept the status decreed without binding himself to pay money so adjudged.

Respondent's moving affidavit had been verified on April 7, 1952, at Oklahoma City, Oklahoma; it recites that he had been served with the summons and complaint in the separation action at his then residence in Oklahoma City, Oklahoma, on or about August 23, 1952; and that " neither any answer nor any appearance was filed on my behalf herein, and consequently the decree was entered by default. For the purposes of this application I am not interested in the merits of this action and any reference to any fact will be made only insofar as the question of jurisdiction is affected."

That New York Supreme Court judgment of separation stands unimpaired by the hereinafter-described June 28, 1952, Oklahoma constructive service default interlocutory decree of divorce, procured by respondent, insofar as said New York Supreme Court judgment adjudicated petitioner's right to a legal separation on grounds of respondent's cruelty, abandonment and nonsupport, prior to February 21, 1952, although denuded of its original provisions for support, and now wholly silent in respect of respondent's money obligations towards his wife and children. Thus, subdivision 2 of section 137 of the New York City Domestic Relations Court Act is therefore inapplicable. The petition will lie and is deemed filed under subdivisions 1–4 of section 92 and subdivision 1 of section 101 and paragraphs (b) and (c) of subdivision 1 of section 103 of the New York City Domestic Relations Court Act.

Accordingly, it is the " law of the case " in the instant proceeding that respondent abandoned petitioner and failed to support her or the children adequately during the period embraced and adjudicated by that judgment of separation, and that the facts therefore bring the parties within the residential jurisdiction requirements of paragraph (c) of subdivision 1 of section 103, if not also paragraph (b) of section 103 of the Domestic Relations Court Act of the City of New York, reading, insofar as pertinent: " § 103. *Residential jurisdiction.* 1. A husband, father * * * may be required to furnish support or may be found guilty of non-support, as provided in the two preceding sections, if, * * * (b) he * * * is not residing or domiciled in the city but is found therein, provided that the petitioner is so residing or domiciled at the time of the filing of the petition for 'support and is so residing or domiciled at the

time of the issuance of the summons or warrant; or (c) he * * * is neither residing nor domiciled nor found in the city but prior to the time of the filing of the petition for support and, while so residing or domiciled, he * * * shall have failed to furnish such support or he shall have abandoned his wife or he * * * shall have abandoned his * * * children * * * and thereafter shall have failed to furnish support, provided that the petitioner is so residing or domiciled at the time of the filing of the petition for support.''

On June 28, 1952, respondent caused to be entered in the District Court of Oklahoma City, Oklahoma, a constructive service default decree of divorce against petitioner, after service of the summons and complaint by publication under the laws of Oklahoma but without an appearance of the defendant (petitioner herein) or answer in that action.

Said decree purports to grant to respondent a provisional (interlocutory) divorce on the ground that the defendant in the action (petitioner herein) had '' abandoned and deserted this plaintiff '' (respondent herein) '' more than one year next preceding the filing of his petition ''. And that Oklahoma decree further provides: '' IT IS FURTHER ORDERED by the court, that the care, custody and control of the minor children of the parties, ' Samuel ' and ' Dorothy ', shall be confided to the defendant, subject to the right of reasonable visitation by plaintiff at all possible times; and, that the plaintiff shall pay to the defendant the sum of $40 per month for the care and maintenance of said minor children, until they shall have attained their legal majority, or until the further order of this court.''

However, it should be observed, such June 28, 1952, decree also expressly provides that the part granting to plaintiff (respondent herein) a divorce from defendant (petitioner herein) '' shall not become absolute and take effect until the expiration of six (6) months from the date hereof.'' That is, such provision of the decree is interlocutory until December 28, 1952, and therefore petitioner is still the wife of respondent. For, a marriage is not terminated until an interlocutory decree of divorce becomes final and meanwhile the parties remain husband and wife (*Matter of Crandall,* 196 N. Y. 127; cf. *People v. Dunlap,* 116 N. Y. S. 2d 434). So, in any event there is not yet applicable to the petitioner wife subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York, which provides: '' 1. If the marriage relationship shall have been terminated by final decree of the supreme court of the

state of New York or by judgment of any other court of competent jurisdiction, when valid in the state of New York, a petition may be filed or an order for support made or enforced in the family court only for the benefit of a child of such marriage.''

Besides, assuming *arguendo* that for the period after December 28, 1952, said Oklahoma decree will constitute presumptive evidence of the jurisdictional facts entitling it to full faith and credit in this court as a judgment of absolute divorce (*Matter of Holmes,* 291 N. Y. 261, 273; *Franklin* v. *Franklin,* 295 N. Y. 431; *Esenwein* v. *Commonwealth,* 325 U. S. 279), nevertheless petitioner has the right, preserved by *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226), and should be accorded opportunity, to adduce evidence to overcome that presumption on a trial of the issue whether respondent had in truth acquired the requisite bona fide Oklahoma domicile. Justice VALENTE's above-quoted decision and order, based on affidavits only, would not be binding on such a trial. '' An order made upon a motion is not *res judicata* in the same sense as a judgment, and the doctrine of the conclusiveness of judgments does not apply with equal strictness to an order made on motion.'' (*American Equitable Corp.* v. *Parkhill,* 252 App. Div. 260, 262; 60 C. J. S., Motions and Orders, § 65.)

Furthermore, in any event, regardless of whether or not petitioner be precluded from seeking an order for her individual support for the period after December 28, 1952, the Oklahoma decree is not binding upon the children. Inasmuch as the Oklahoma court would have the power to amend the support provisions for the children contained in said June 28, 1952, decree (Okla. Stat. Ann., tit. 12, § 1277; *Boulanger* v. *Boulanger,* 127 Okla. 103), this Family Court has jurisdiction to enter against respondent an order for support of his two children, who are residing in New York City, in an amount exceeding the nominal $40 monthly figure fixed in the ex parte Oklahoma decree (*Langerman* v. *Langerman,* 303 N. Y. 465, 473; see, also, *Langerman* v. *Langerman,* 203 Misc. 230).

In the light of the established principle that a father is under the primary obligation to support his minor children, regardless of any resources or fault of the mother, according to the father's financial capacity and station in life and not merely at the low subsistence level of public relief budgets, it should be apparent that an award of less than $5 a week for each of the two children of a father who concededly can earn at least $55 a week is not the '' fair and reasonable sum according to his means, as may

be determined by the court '' contemplated by subdivision 1 of section 101 and subdivision 3 of section 92 of the Domestic Relations Court Act of the City of New York.

Wholly fallacious also is respondent's plea of immunity from service of process at the time when he received in New York City on July 14, 1952, the summons to appear before this court on July 18, 1952.

The '' Special Notice of Appearance and Objections to Jurisdiction '' filed on respondent's behalf on July 18, 1952, recites that '' the respondent who is employed in Oklahoma City, Oklahoma (at a weekly salary of $55 a week or take-home pay of $51 a week) during his vacation from his employment came to New York City during the week of July 14, to see his children, and for no other purpose, and while here for that purpose was served with a summons herein.''

There is not a scintilla of proof that he was '' found '' in New York City on July 14, 1952, '' solely because he has come here for the special purpose of attending court, either as a party or a witness in a legal proceeding '' (" Hodges " v. " Hodges ", 202 Misc. 71, 73). Those words are excerpted from that well considered recent opinion of my esteemed colleague Justice LORENCE, in which he writes, at pages 72–73: '' A distinction must be made between a nonresident ' found ' in this city, because he chooses to stay here notwithstanding his residence elsewhere, and a nonresident who is ' found ' in New York City solely because he has come here for the special purpose of attending court, either as a party or a witness in a legal proceeding. In the former case, the nonresident so ' found ' here may be served with process with the same effect as though he were a resident. In the latter case he is immune from service of process upon him.''

Indeed, a careful reading of Justice LORENCE's clear and comprehensive opinion should have deterred respondent's counsel from citing it as an authority in his favor; on the contrary, it upholds the view that, having come to New York City to visit his children, and not as a party or a witness in a law suit, respondent is subject to the general doctrine that a nonresident is as amenable to legal process as a resident.

Another case cited by respondent's counsel (Chase Nat. Bank v. Turner, 269 N. Y. 397) also contains refutation of his contention; at page 401 the New York Court of Appeals opinion states: '' If the party comes into the State for other purposes besides attending the hearing his immunity is gone (Finucane v.

*Warner,* 194 N. Y. 160).'' For, as held in *Finucane* v. *Warner* (*supra*), the privilege of exemption from service of process is extended not for the personal convenience of the individual served but to enable the courts properly to transact business (see, also, *Parks* v. *Marco,* 136 N. Y. 585).

'' Of course, nothing said in the course of this note which is concluded today affects the rule that a nonresident found within the territorial jurisdiction of the court may usually be served with process with the same effect as though he were a resident. The cases discussed consider the question as it arises when a party or witness has come within the jurisdiction of a State to attend the trial of the action to which he is a party or to give evidence at a trial at which his testimony as a witness is desired. That the person served with process is a nonresident does not affect the validity of the service, unless the question of immunity of service arises under the rule heretofore discussed.'' (Service of Process upon Non-Resident Parties and Witnesses Temporarily within the Jurisdiction, N. Y. L. J., Sept. 25, 1951, p. 610, cols. 1–3.)

Surely, the privilege of immunity may not be invoked by a husband-father to justify his running away from a face-to-face inquiry, as to the facts concerning his duty of support, by a court having both parties before it.

For the foregoing reasons respondent's motion to vacate service of the summons and to dismiss the proceeding is in all respects denied and his objections to jurisdiction overruled.

It remains only to consider what present direction should be made for the proper protection of the wife and children.

Respondent's protestations of affectionate concern for the welfare of his children are negatived by the paucity and irregularity of his support contributions and by his interposing unsound technical objections to the jurisdiction of this court. The record clearly shows justification for the issuance of a warrant now under subdivisions (b), (c) and (d) of section 123 of the New York City Domestic Relations Court Act and for consideration as to whether the facts developed upon a hearing attended by respondent may not call for the ordering of a bond under sections 151 *et seq.* of the New York City Domestic Relations Court Act and Family Court Rule XXXVI (Bender's Court Rules, [1st ed.], p. 374).

It is hoped that respondent's attorney may be able to assure respondent's attendance, during his next New York City visit, before whatever justice may be then sitting without respondent's being taken into custody under the warrant.

If the warrant prove ineffectual to eventuate in the entry and due performance of an appropriate support order in the instant proceeding and respondent remain in Oklahoma, petitioner may elect to invoke, instead, the remedies provided by the Uniform Support of Dependents Acts of New York (L. 1949, ch. 807, as amd.) and of Oklahoma (Okla. Stat. tit. 12, §§ 1601–1610). By filing in this court an "initiating State" petition under that New York statute there may be ultimately entered an appropriate support order against respondent in an Oklahoma "responding State" court and enforced there. Such procedure is designed to create an effective civil remedy to enforce support of abandoned wives and children when a husband-father absconds to another State and leaves dependents here (see "Vincenza" v. "Vincenza", 197 Misc. 1027, 1028–1029; Reciprocal Support Legislation, Current Trends in State Legislation, 1952, University of Michigan Law School Legislative Research Center, pp. 164–296). But that legislation does not, as misconceived by petitioner's attorney, require Oklahoma to give full faith and credit to a support order entered under the Domestic Relations Court Act of the City of New York, as distinguished from the joint co-operation in a proceeding under the reciprocal Uniform Support of Dependents statutes. As held in *Reisman* v. *Reisman* (46 N. Y. S. 2d 335), the procedure for collection of a Family Court support order entered under the Domestic Relations Court Act of the City of New York is exclusively provided in, and limited by, that particular statute; arrears accrued under such an order do not constitute a vested obligation in the nature of a liquidated debt which may be docketed as a judgment, as if unpaid permanent alimony awarded in a final judgment of divorce or separation; nor is a family court support order entitled to full faith and credit in a sister State.

Finally, this decision is based on the afore-mentioned notice of special appearance, affidavits, briefs and letters to and from counsel and the Bronx County Clerk's entire file in the separation action.

Notice shall be given pursuant to the subjoined direction.