*934 OPINION OF THE COURT
Susan Bauer Brofman,
Hearing Examiner.
The above action for support was commenced pursuant to the Uniform Support of Dependents Law (Domestic Relations Law art 3-A).
BACKGROUND
The parties were married in the State of New York on August 13, 1965 and thereafter had three children. On September 14, 1979 they entered into a separation agreement in New York which provided for monthly child support payments of $450. This agreement was subsequently incorporated into a Putnam County Supreme Court divorce judgment dated June 2, 1980.
On February 2, 1984, petitioner filed for an upward modification in the Putnam County Family Court. After a September 18, 1984 hearing (Hillery, J.) the petition was dismissed following a finding that no substantial change in circumstances had been proven. However, the initial support decree was made an order of the Family Court.
Petitioner, on April 16, 1985, again sought an upward modification in the Putnam County Family Court. A hearing was held June 13, 1985 (Braatz, J.) which once again resulted in a denial of the requested increase.
Only four months after the decision of Judge Braatz, petitioner moved to Maryland, once again filing a petition for support this time pursuant to the Uniform Support of Dependents Law. She herein seeks an $800 per month order for child support.
ISSUE
The issue thus presented is whether petitioner, solely as a result of her change in residence, should be permitted to request yet a third increase in support by filing a de novo petition under the Uniform Support of Dependents Law.
DISCUSSION
In reviewing the purpose and history of New York State’s Uniform Support of Dependents Law (USDL), the question presented must be answered in the negative.
The original USDL statute was enacted in 1949 to respond to a "wide-spread concern over the inadequacy of the impact *935 of the criminal law on a deserting husband or father who had run away to another State.” ("Vincenza" v "Vincenza", 197 Misc 1027, 1028.)
The need for a uniform support law was documented by the Council of State Governments in a manual of procedure entitled "Reciprocal State Legislation to Compel the Support of Dependent Wives and Children Within and Without the State”, issued February 1950:
"At the present time, there is no effective civil remedy to enforce support of abandoned wives or children where a father absconds to another state, leaving behind his dependents. The only legal hold upon such a person at present is a criminal process which is impractical because of expensive extradition costs, the limited nature of the criminal statute, and the fact that arrest of the husband or father destroys the source of wage earnings.
"The extent of the problem is shown by the fact that in one of the nation’s more populous counties in 1947, the number of complaints covered 555 families having a total of over fifteen hundred children under 16 years of age. There are over 3,000 counties in the United States, and the problem is most serious in heavily populated centers.”
Until the enactment of the USDL a respondent who absconded from the city or State where his or her family resided was effectively immune from enforcement of his duty to support his or her family. The USDL provided a mechanism, for the first time, to enforce support obligations where parties live in different localities. ("Bellanca" v "Bellanca", 199 Misc 698.) The intent of the statutory scheme was to create an effective civil remedy for a deserted parent with dependent children. ("Maxim" v "Maxim", 203 Misc 610.)
The USDL statute provided a new remedy for support enforcement. Unfortunately, the purpose of USDL has occasionally been distorted over the years, and its provisions have been applied in a fashion never envisioned by its drafters.
The stated purpose of the current USDL statute, found in Domestic Relations Law article 3-A, is "to secure support in civil proceedings for dependent spouses and children from persons legally responsible for their support.” (Domestic Relations Law § 30.) "This article shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter.” (Domestic Relations Law § 41 [1].)
*936 "Civil Remedy” is defined by Black’s Law Dictionary (4th ed) as follows: "The remedy afforded by law to a private person in the civil courts in so far as his private and individual rights have been injured by a delict or crime; as distinguished from the remedy by criminal prosecution for the injury to the rights of the public.” (Emphasis added.)
In short, a remedy by definition requires as a condition precedent that there be an injured or "wronged” party.
The matter presently before the court does not involve a respondent who has absconded from the jurisdiction; a petitioner who has been unable to secure support; nor a petitioner whose rights have been jeopardized. To the contrary, this petitioner obtained an order of support in Putnam County and twice sought an increase. She was afforded a hearing on each application and was denied relief by two different Family Court Judges because she failed to establish an evidentiary basis for an upward modification.
Unable to provide sufficient proof to justify the increase she sought, she filed a de novo USDL petition after moving to Maryland. This change alone was used as a means to circumvent the laws of this State. Clearly, such a maneuver was not the intended purpose of the USDL legislation.
This court is not unmindful of the Court of Appeals decision in Lebedeff v Lebedeff (17 NY2d 557). Lebedeff involved a New York State USDL proceeding that had originated in California. Mr. Lebedeff argued that since there was a New York State Supreme Court decree of separation which provided for support and reserved all enforcement and modification proceedings to the Supreme Court, the Family Court lacked jurisdiction. The Court of Appeals rejected that argument and held that the USDL provides "an independent source of jurisdiction conferred upon the Family Court (Family Ct. Act, § 411; see Landes v. Landes, 1 N Y 2d 358).” (Supra, p 559.) The court thus held that, despite the terms of the Supreme Court decree, the Family Court did have jurisdiction. That is clearly distinguishable from the present case, in that this petitioner has never been denied access to Family Court.
Similarly distinguishable are the Appellate Division, Second Department, decisions rendered in Nichols v Bardua (74 AD2d 566), Lanum v Lanum (92 AD2d 912), and Matter of Brizzi v Brizzi (92 AD2d 919). Those decisions permitted the recipient of an order of support to enforce the support provisions of a divorce judgment, despite the fact that there had been subse *937 quent reduced orders of support as a result of separate proceedings brought pursuant to USDL. The basis for these decisions is Domestic Relations Law § 41, which provides that USDL shall not affect or impair any other civil or criminal remedy available to the petitioner.
Conspicuously absent from any New York decisional law to date is language interpreting USDL which would afford a petitioner greater rights that he or she would have had, if both parties had remained within the same jurisdiction.
The County Attorney contends that the language "additional or alternative civil remedy” (Domestic Relations Law § 41) gives the petitioner a right to a de novo hearing. The County Attorney acknowledges that this "remedy” is available to petitioner solely as a result of her move to another State and despite the fact that she had twice failed to obtain the same relief in this court by way of her upward modification petitions. It is uniformly held that statutes must be interpreted in a way that is with the widely accepted presumption that the Legislature would not intend that a statute have an unjust result. (People v Santoro, 229 NY 277.) Thus, where there exists a construction giving force to the whole act and its underlying legislative intent, and in so doing the courts avoid an injustice, such a reading must necessarily be adopted. (People ex rel. Washburn v French, 52 Hun 464.)
It is abundantly evident that the Legislature never intended that USDL provide a petitioner with a "second bite at the apple” when an increase in support was unsuccessfully sought by means of the conventional approach under our law. To grant petitioner a de novo hearing now, based solely on her own voluntary act of leaving Putnam County, would make a travesty of the law and decisions of this State and result in a grave injustice.
In light of the foregoing, the petition herein is, in all respects, dismissed.